RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0350p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

VIKTOR GJYZI,

Petitioner,

v.

No. 03-3054

JOHN ASHCROFT, Attorney General; CAROL JENIFER, District Director; IMMIGRATION AND NATURALIZATION SERVICE,

Respondents.

On Petition for Review of an Order of the
Board of Immigration Appeals.
No. A79 594 589.

Submitted: August 12, 2004

Decided and Filed: October 13, 2004

Before: MOORE and COLE, Circuit Judges; MARBLEY, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Richard A. Kulics, IMMIGRATION LAW CENTER, Birmingham, Michigan, for Petitioner. Marshall Tamor Golding, Richard M. Evans, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondents.

_____

## OPINION

_____

R. GUY COLE, JR., Circuit Judge. Petitioner Viktor Gjyzi seeks review of an order of the Board of Immigration Appeals ("BIA"), dated December 17, 2002, which denied his applications for asylum and withholding of removal pursuant to the Immigration and Nationality Act ("INA") and the Convention Against Torture. Although the BIA disagreed with the Immigration Judge's adverse credibility finding – which the IJ made with respect to Gjyzi's claims of past persecution and his date of entry into the United States – the BIA nevertheless agreed with the IJ's conclusion that Gjyzi's asylum application was untimely and that he failed to satisfy his burden of proof for withholding of removal and relief under the Convention

_____

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

Against Torture.  For the reasons set forth in this opinion, we grant the petition for review, vacated the judgment of the BIA, and remand for further consideration.

## I.  BACKGROUND

### A. *Facts*

Viktor Gjyzi is a native of Albania.  He seeks asylum and withholding of removal on the basis of alleged persecution for his political opinions and activities.  Gjyzi was an active and outspoken member of the Democratic Party in Albania and alleges that he was persecuted by the state police – whom he claims are protective of the Socialist Party and hostile to opposition movements – for his political activities.

In the affidavit supporting his application for asylum and testimony before the Immigration Judge ("IJ"), Gjyzi explained that his family had long been a politically active and persecuted one.  His father was killed in 1986 by Communist bands as political revenge for his democratic political opinions. Gjyzi himself joined the Democratic Party in August 1991 and was active in election campaigns and demonstrations until his departure from Albania in the autumn of 2000.  In 1991, 1992, and 1997, he served either as a member of the electoral commission or the chairman of the electoral commission.  He was also an observer of other elections.  He participated in demonstrations in the city of Fier between 1997 and 2000 and claims to have been beaten for that activity by the police.

Gjyzi claims that he was repeatedly subject to police abuse and intimidation for his political activities.  Following a Democratic Party rally in March 1991, he was arrested, beaten, and detained by the police for three days.  Upon being released, the police threatened him not to participate in other rallies or support for democracy.   In June of 1997, Gjyzi served as chairman of the election commission, but he expressed opposition to the terror and threats instigated by the Socialist Party and which, he felt, pervaded the election. While preparing a report on the election, on June 29, 1997, Gjyzi was stopped by the police and told that he would be imprisoned.  The police took his report, read it, and beat him.  He was struck on the head with a knife and bayoneted in the hip.  The police then tore up the report and left him in the middle of the street, where his friends found him, ultimately taking him to the hospital, where he remained for three days.  Still, Gjyzi continued his political activity and on either November 12 or December 12, 1999, he spoke at a demonstration about the problems with the Socialists – corruption, organized terror, drugs, and contraband.  Three thousand people attended.  However, toward the end of the rally, the police intervened and dispersed the participants.  Upon his departure from the rally, Gjyzi was stopped by three Secret Police officers on the street and threatened.  He was told to stop his political activity, or they would "disappear me" – meaning imprison or kill him.  The police then beat him.

In October 2000, he was the Democratic Party's observer for elections at a voting center.  However, he strongly denounced and publicly condemned the allegedly illegal acts of the Socialist Party in connection with these elections, and as a result of that, began receiving anonymous letters and telephone calls.  On October 10, 2000, individuals shot into his home window with guns.  He was later phoned by these individuals, who told him that this was his last warning.  Gjyzi reported this incident to the police in Fier, but alleges that they responded: "You deserve that as a Democratic who supports Berisha." The Democratic Party of Fier protested Gjyzi's treatment  by the police and demanded that those responsible for the shooting and threats be brought to justice.  However, seeing that no action was being taken and fearing that the state mafia or police would come after him, to kill him, Gjyzi left Albania for the United States in October or November of 2000.

### B. *Administrative Proceedings*

On December 6, 2001, a notice to appear was issued and charged Gjyzi with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), because he entered the United States illegally.  Having conceded removability, Gjyzi filed an application for asylum and withholding of removal on October 29, 2001.  After

an evidentiary hearing on April 1, 2002, the IJ issued a decision. First, the IJ denied Gjyzi's asylum application as untimely based on the "vagaries [sic] on the date of his entry" into the United States. The IJ seems to have been referring to the lack of clarity surrounding the date of Gjyzi's arrival in the United States. The Government's charging instrument, Gjyzi's written asylum application, and the accompanying affidavit all provide November 5, 2000 as the date of Gjyzi's illegal entry. However, at his hearing before the IJ, Gjyzi testified that he entered the United States on December 5, 2000. Based on these discrepancies – but despite the fact that either entry date was still safely within the one-year time limit preceding Gjyzi's asylum application – the IJ found Gjyzi not credible and stated that, as a result, she could not find that Gjyzi had shown by "clear and convincing evidence" that he filed his asylum application within one year of the date of his arrival in the United States, as required by 8 U.S.C. § 1158(a)(2)(B).

The IJ also denied Gjyzi withholding of removal on the ground that his testimony concerning his past persecutions was not credible. The IJ's adverse credibility finding was based on her perceived discrepancies between Gjyzi's asylum application and his testimony, and her conclusion that U.S. State Department country reports on Albania and other documents summarizing the political situation in Albania did not support Gjyzi's claims of persecution.

Gjyzi timely appealed to the BIA, challenging the IJ's adverse credibility findings and her denial of his applications for asylum and withholding of removal. A single Board member, acting pursuant to 8 C.F.R. § 1003.1(e)(5), issued a terse opinion, which repudiated the IJ's adverse credibility finding, but, without additional explanation, upheld the IJ's conclusions that Gjyzi's asylum application was untimely and that he was ineligible for withholding of removal pursuant to the Convention Against Torture. The BIA's order stated, in full:

> We affirm the decision of the Immigration Judge in part. *See Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994) (noting that adoption or affirmance of a decision of an Immigration Judge, in whole or in part, is "simply a statement that the Board's conclusions upon review of the record coincide with those the Immigration Judge articulated in his or her decision"). We have reviewed the record, and are unable to agree with the Immigration Judge that material reasons existed to find that the respondent was incredible in these proceedings. That aspect of the respondent's appeal is sustained. However, we find that the Immigration Judge correctly concluded that the respondent had failed to apply for asylum within the 1-year period required under the law. That aspect of the Immigration Judge's decision is affirmed. Further, we agree with the Immigration Judge that the respondent failed to satisfy his burden of proof for withholding of removal and relief under the Convention Against Torture. We affirm that aspect of the Immigration Judge's decision as well. Accordingly, the appeal is dismissed.

Gjyzi timely appealed the adverse decision of the BIA.

## II. ANALYSIS

### A. *The Timeliness of Gjyzi's Asylum Application*

Our concern here is as follows. The IJ deemed Gjyzi's asylum application untimely on the sole ground that he made conflicting representations concerning his date of entry into the United States and was, therefore, not credible. As we noted above, Gjyzi's asylum application listed November 5, 2000 as his date of entry; but in his testimony before the IJ, he claimed to have entered the United States on December 5, 2000.

On appeal, the BIA broadly repudiated the IJ's adverse credibility findings. Yet, without any additional explanation, the BIA affirmed the IJ's conclusion that Gjyzi failed to show by clear and convincing evidence that he filed his asylum application within one year of his entering the United States.

By broadly repudiating the IJ's adverse credibility findings, the BIA vitiated the argument that Gjyzi failed to establish his date of entry because he was not credible due to the discrepancy between the November 5 and December 5, 2000 entry dates. Alternatively, by finding him credible, the BIA has implicitly credited one or the other of Gjyzi's representations concerning his date of entry. In either case, because each date still places Gjyzi safely within the one-year filing period provided by 8 U.S.C. § 1158(a)(2)(B) – since his application for asylum and withholding of removal was filed on October 29, 2001 – the basis for the BIA's decision is difficult to comprehend. In other words, in a case where the IJ's adverse credibility findings are the only basis for an untimeliness decision, the BIA fails to explain how it can reject the IJ's adverse credibility determinations, but still uphold the IJ's disposition which flowed exclusively from those adverse credibility determinations.

The Government is correct that we lack jurisdiction to review the denial of an asylum application based on the factual determination that the application was untimely filed. The INA states, in relevant part that: "No court shall have jurisdiction to review any determination of the Attorney General [concerning the timeliness of an alien's application for asylum]." 8 U.S.C. § 1158(a)(3). In the Government's view, Gjyzi seeks review of the timeliness determination, and therefore, we have nothing to review. But Gjyzi does not challenge the BIA's timeliness determination *per se*; rather, he argues that the BIA made a legal error in the course of making that determination. This is an important distinction, because, as a matter of due process, assigning complete discretion to an agency to apply the law does not allow that decisionmaker to ignore the law. *See McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 111 S. Ct. 888, 112 L.Ed.2d 1005 (1991) (provision barring appellate judicial review of a determination concerning an immigration application did not foreclose "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications.") In other words, the specter of a due process violation is raised – and easily falls within our jurisdiction – where the agency ignores its own law.

In this case, the denial of asylum to Gjyzi based on the timeliness of his asylum application may be correct or incorrect, but at present, it lacks an actual or divinable reasoned basis, which raises due process concerns and compels us to vacate the order denying asylum and to return the case to the immigration authorities for further explanation. *See Mickeviciute v. I.N.S.*, 327 F.3d 1159, 1164 n.4 (10th Cir. 2003) ("Because our jurisdiction in part depends on the basis for the BIA's decision, we remind the BIA that to the extent it fails to adequately articulate the grounds on which it denies relief, our jurisdiction may be difficult to ascertain.").

**B. *Past Persecution and Withholding of Removal***

The omissions in the BIA and IJ's conclusions with respect to Gjyzi's past persecution and eligibility for withholding of removal are equally problematic.

Because Gjyzi does not raise his Convention Against Torture claim in his brief before this Court, we consider only his challenge to the BIA and IJ's denial of his application for withholding of removal pursuant to the INA.

To be eligible for withholding of removal pursuant to the INA, an alien must establish that "it is more likely than not" that his or her "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(c)(2). We must uphold the BIA's determination denying withholding of removal, unless it is "manifestly contrary to the law." *Castellano-Chacon v. I.N.S.,* 341 F.3d 533, 552 (6th Cir. 2003). If an alien can establish that he has been subject to past persecution, there is a presumption, subject to rebuttal by the Government, that his "life or freedom would be threatened in the future" in the country of removal. 8 C.F.R. § 208.16(b)(1)(i).

Even under this highly deferential standard of review, we conclude that the BIA's decision cannot, on this record, be upheld. Both the BIA and IJ fail to state conclusions at all on several important issues.

As discussed, the IJ denied Gjyzi withholding of removal because she found that he was not credible with respect to his claims of past persecution, due to perceived inconsistencies in his testimony and asylum application. The IJ also rejected Gjyzi's claims of past persecution on the ground that they were not supported by the U.S. State Department Country Report on Albania or the Profile of Asylum Claims and Country Conditions submitted by the Government.[1] The BIA overturned the IJ's adverse credibility findings, but again, without explanation, affirmed the denial of withholding of removal pursuant to the INA. Having voided the rationale that Gjyzi was not credible, the BIA failed to indicate an alternative basis for finding that Gjyzi was ineligible for asylum and withholding of removal under the INA.

It is difficult to conduct meaningful judicial review of the IJ's decision finding that an alien has "failed to satisfy his burden of proof for withholding of removal" when there is no underlying determination of whether there was past persecution. *See El Moraghy v. Ashcroft*, 331 F.3d 195, 204 (1st Cir. 2003)*; Yatskin v. I.N.S.*, 255 F.3d 5, at 9 (1st Cir. 2001). It is not discernible whether the BIA's reversal of the IJ's adverse credibility finding signaled the BIA's belief that Gjyzi sufficiently showed past persecution – although that is a logical implication of the BIA's ruling. If it did signal recognition of Gjyzi's past persecution, there is a presumption, subject to rebuttal by the Government, that Gjyzi's life or freedom would be threatened in the future. But there simply is no evidence that Gjyzi's case was evaluated under that burden-shifting scheme. The BIA purported to affirm the IJ's denial of withholding of removal, because, as the BIA stated, "the Board's conclusions . . . coincide with those the Immigration Judge articulated in . . . her decision," but we know that the IJ never reached the burden-shifting analysis, because it rejected Gjyzi's claims of past persecution.

The absence of reasoned discussion of past persecution undercuts any meaningful review of the BIA's apparent rejection of the claim that Gjyzi would be subject to future persecution. We do not know whether Gjyzi should have had the benefit of the regulatory presumption of future persecution based on prior events, and if so, whether or not that presumption was employed.

Here, we do not suggest that the evidence compels a conclusion either way with respect to Gjyzi's withholding of removal claim, but in light of the uncertainty as to whether Gjyzi's case was decided within the prescribed regulatory framework, a remand for further explanation and consideration is required.

## III. CONCLUSION

The need for clear administrative findings is implicit in the statute pursuant to which we review the BIA's decision. The statute requires that the agency's conclusions be "supported by reasonable, substantial, and probative evidence on the record considered as a whole. . . ." 8 U.S.C. § 1105(a)(4); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L.Ed. 1995 (1947) ("a reviewing court . . . must judge the propriety of [administrative] action solely by the grounds invoked by the agency," and "that basis must

---

[1] We also note that if upon remand, the BIA determines the Gjyzi has demonstrated that he has suffered past persecution, the BIA must make an *individualized* determination regarding whether the Respondent has shown through a preponderance of the evidence, that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality." 8 C.F.R. § 208(b)(1)(A); *see also Ouda v. I.N.S.*, 324 F.3d 445, 455 (6th Cir. 2003). The BIA must resist the urge to give controlling weight to State Department materials without properly assessing Gjyzi's particular claim. Individual assessment is particularly important in cases such as this one, where the State Department's own materials contain apparently contradictory information.

Finally, this Court encourages the IJ to make specific credibility findings based on the fair consideration, as appropriate, of well-documented events in Albania. Here, the IJ appeared to analogize Gjyzi's decision to flee, two weeks after being shot at his home, and the Government's reluctance to pursue the assailants, with recent events in Detroit, Michigan. The IJ stated: "The ability to arrest individuals involved in drive-by shootings is certainly a problem that is understood in this country and this city [Detroit, Michigan]." In a footnote, the IJ further noted that: "A three-year-old child was killed in the city of Detroit two weeks ago, and her assailants are still at liberty." Though judges are, of course, permitted and encouraged to draw on their own experiences and common sense in making decisions, we note that each alien's case is entitled to consideration on terms relevant to the country from which they are seeking asylum.

be set forth with such clarity as to be understandable."). Although the BIA need not write extensively on every issue – indeed, we have joined our sister circuits in holding that "the BIA's streamlining procedures," such as summary affirmances of IJ decisions, "do not themselves alone violate an alien's right to due process," *Denko v. I.N.S.*, 351 F.3d 717, 730 (6th Cir. 2003) – the failure of the BIA to explain its decision in this case unnecessarily frustrates our review.

For those reasons, the order of the BIA is vacated, and the case is remanded to the BIA for further proceedings consistent with this opinion.