NOT FOR PUBLICATION
File Name: 05a0703n.06
Filed: August 12, 2005

No. 04-4166

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AHMED BAH, | ) | |
| | ) | |
| Plaintiff-Petitioner, | ) | ON PETITION FOR REVIEW OF A |
| | ) | DECISION OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ALBERTO GONZALES, ATTORNEY | ) | |
| GENERAL, | ) | OPINION |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

**Before: NELSON and GILMAN, Circuit Judges; and DONALD, District Judge.**[*]

**BERNICE BOUIE DONALD, District Judge.** Petitioner Ahmed Bah's ("Bah" or "Petitioner") application for political asylum or for withholding of removal was denied by the Immigration Judge ("IJ"), and Bah was ordered to be removed from the United States. That decision was affirmed by the Board of Immigration Appeals ("BIA"). Bah now petitions this Court for review. For the reasons set forth below, we **GRANT** the Petition, **VACATE** the decision of the BIA, and **REMAND** for further proceedings to determine whether Bah is entitled to the relief he seeks.

---

[*]The Honorable Bernice Bouie Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

## I.  BACKGROUND

Petitioner is from Freetown, Sierra Leone.  He and his father were both members of the Sierra Leone People's Party ("SLPP"), which is the party of the government.  Bah attended a meeting of the SLPP, and also held a meeting in his home.  The Revolutionary United Front ("RUF") is a rebel group intent on the overthrow of the government.

Petitioner was captured by the RUF in 1997.  He claims that he was beaten and tortured because of his and his father's involvement with the SLPP, and that he was forced to scavenge through houses that were abandoned by villagers after the RUF destroyed the homes.  He escaped during a surveillance mission and returned to Freetown.  In January, 1998, Bah was again captured by RUF forces and claims that he was beaten so badly that he is now shorter on one side than the other.  Again Bah escaped.  In May, 1998, Bah was captured, this time by members of the SLPP who beat him because they believed that Bah's father was trying to take over.  Also in May, 1998, Bah's father was seized and killed.  Bah became very emotional when testifying about the death of his father.

Soon after the death of his father, Petitioner left Sierra Leone and went to Guinea, where he lived for a year in a mosque.  From Guinea, Petitioner traveled to Dakar, Senegal, where he remained for approximately a year.  Through a friend of his father's, Bah was able to purchase a passport and visa of someone named Ibrahima Mamadou Ly.  With these documents, Bah was able to illegally enter the United States on September 14, 2000.  Petitioner claims that he will be tortured and killed if he is returned to Sierra Leone.

Petitioner applied for asylum and withholding of removal on December 14, 2000. His hearing was held on April 3, 2002. The IJ denied Bah's applications for asylum and withholding of removal, and Bah appealed that decision. The BIA initially dismissed Bah's appeal on February 24, 2004. However, when Bah's attorney failed to file a timely appeal, Bah adequately alleged ineffective assistance of counsel. The BIA then withdrew its original dismissal and reissued its decision on September 9, 2004, again dismissing Bah's appeal. The BIA adopted the findings of the IJ that Bah did not show by clear and convincing evidence that he timely filed his asylum application and that Bah was not eligible for withholding of his removal. Bah then timely filed his petition for review with this Court on September 27, 2004.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review Petitioners' administratively exhausted claims pursuant to 8 U.S.C. § 1105a(a), modified by section 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Because the BIA affirmed the IJ's decision without opinion, we review the IJ's decision as the final agency order under the "substantial evidence" standard. Mullai v. Ashcroft, 385 F.3d 635, 638 (6th Cir. 2004) (citing Denko v. I.N.S., 351 F.3d 717, 730 (6th Cir. 2003)). The substantial evidence standard requires us to uphold the IJ's decision if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting Koliada v. I.N.S., 259 F.3d 482, 486 (6th Cir. 2001)). Moreover, we may not reverse "simply because [we are] convinced that [we] would have decided the case differently." Id. (quoting Adhiyappa v. I.N.S., 58 F.3d 261, 265 (6th Cir. 1995)). "Rather, in order to reverse the BIA's factual determinations, the reviewing court must find that the evidence

not only supports a contrary conclusion, but indeed compels it." Id. (quoting Klawitter v. I.N.S., 970 F.2d 149, 152 (6th Cir. 1992)).  The standard under which a judicial review of an immigration judge's order is conducted is highly deferential.  The IJ's findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  Id.; 8 U.S.C. § 1252(b)(4)(B).  "This standard does not mean, however, that we must accept the IJ's credibility findings carte blanche.  Rather, we must still subject these findings to meaningful judicial review." Nwakanma v. Gonzales, 126 Fed. Appx. 699, 700 (6th Cir. 2005).

### III.  ANALYSIS

A.  Asylum

Petitioner bears the burden of establishing that he is a refugee who is eligible for asylum either because he has suffered actual past persecution or because he has a well-founded fear of future persecution.  8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(a); I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).  If Petitioner demonstrates past persecution, he is entitled to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1); Mullai, 385 F.3d at 638.  The government may overcome the presumption by establishing by a preponderance of the evidence that there is "a fundamental change in circumstances such that [Petitioner] no longer has a well-founded fear of persecution in [his] country of nationality. . . ." 8 C.F.R. § 1208.13(b)(1)(i)(A); Mullai, 385 F.3d at 638.  "The [government] must do more than show that circumstances in the country have fundamentally changed; the [government] must also show that such change negates the particular applicant's well-founded fear of persecution." Ouda v. I.N.S., 324 F.3d 445, 452 (6th Cir. 2003) (citing Mikhailevitch v. I.N.S.,

146 F.3d 384, 389 (6th Cir. 1998)).  Additionally, in the absence of a well-founded fear of future persecution, an asylum applicant may be eligible for <u>Chen</u> humanitarian asylum, if the applicant establishes "compelling reasons for being unwilling or unable to return to [his] country arising out of the severity of the past persecution. . . ."  8 C.F.R. § 1208.13(b)(1)(iii)(A); <u>In re Chen</u>, 20 I&N. Dec. 16 (BIA 1989).

The BIA adopted the IJ's findings that Petitioner was not eligible for asylum.  The IJ based his conclusion of law that Bah was not entitled to asylum on five factors:  1) Bah lacked credibility, 2) Bah did not demonstrate by clear and convincing evidence that his application for asylum was timely filed, 3) Bah's captures were for recruitment rather than persecution, 4) Bah's own possible participation in the persecution, and 5) the situation in Sierra Leone more closely resembled civil war than persecution.

First, the IJ found Bah's testimony unconvincing.  The essential element to a finding of a lack of credibility is that the discrepancies must go to the heart of the petitioner's claim.  <u>See Daneshvar v. Ashcroft</u>, 355 F.3d 615, 619 (6th Cir. 2004).  Furthermore, there is a difference between major and minor inconsistencies.  <u>See Huang v. Ashcroft</u>, 113 Fed.Appx. 695, 700 (6th Cir. 2004) (citing <u>Yu</u>, 364 F.3d at 703-04).  "Major inconsistencies go to the heart of a petitioner's asylum claim.  In contrast, minor inconsistencies reveal nothing about petitioner's persecution and therefore are an inadequate basis for an adverse credibility finding, though they can give supplemental support to an adverse credibility finding premised on other grounds."  <u>Id.</u>

In his Findings of Fact, the IJ was concerned with omissions or discrepancies in the testimony of Petitioner.  In addition to inconsistencies concerning Bah's entry date (discussed *infra*)

the IJ was specifically concerned that 1) Bah failed to mention in his application that, in addition to the two captures he described, there was a third beating by SLPP supporters, and 2) Bah testified that he left Sierra Leone in June, 1998, while his application declared that he left in December, 1998. Additionally, in the Statement of the Case, the IJ noted a number of "variances," specifically: 1) Bah's application stated that he lived in Conakry, Guinea, but he testified that he lived in a mosque but was vague as to the exact location of the mosque, 2) Petitioner testified that he was beaten so badly by the RUF that one side is now shorter than the other, but he offered no medical evidence to support that assertion, 3) Petitioner testified that the person who prepared the application made mistakes, but the IJ seems to have found that incredible because the preparer got some of the details correct, and 4) Bah testified at one point that his wife died in January, 2000, and at another point he testified that she died in January, 2001.

Bah's failure to include the beating by SLPP members on his application was not an indication that he lacked credibility. First, "[s]uch a failure may be an omission, but it is not an inconsistency." Nwakanma v. Gonzales, 126 Fed.Appx.699, 701 (6th Cir. 2005). Second, Bah explained that there were difficulties with the person filling out the form. Third, it is an irrelevant and insignificant omission. Bah's testimony and application matched concerning the captures and beatings by the RUF. The fact that Bah did not include on his application a beating by his own party because of some internal strife is immaterial to his claim.

Bah explained that the inconsistency concerning the date of his departure from Sierra Leone was caused by an error on the part of the translator. Furthermore, because he testified to an earlier departure date than his application showed, the discrepancy would not bolster his case, but instead,

if anything, would damage his case. Thus, it is unlikely that Petitioner's inconsistency would support a finding of incredibility. "If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." Id. (citations omitted).

The IJ's concerns in the Statement of the Case are even less indicative of incredibility. The only discrepancy mentioned in that section of the IJ's order was whether Bah's wife died in January, 2000 or January, 2001. Bah explained that he was nervous and got the year wrong the first time. Either way, it was after Petitioner left Sierra Leone and is irrelevant to Bah's asylum application. The IJ's concerns that Bah was vague about where the mosque in which he lived in Guinea was located and that the person preparing the application got some details right and others wrong are irrelevant, at best, and do not support a finding of incredibility. Although Bah's claim would certainly have been bolstered had he offered medical evidence to support his assertions concerning the severity of the beating he received, corroborating evidence is not always required. "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a). Furthermore, that alone would not be enough to support a finding of incredibility. The IJ could have chosen not to take into consideration Bah's testimony concerning one leg now being shorter than the other, but that does not make Petitioner less credible.

In Nwakanma v. Gonzales, the IJ based his decision on inconsistencies such as the number of men who searched the petitioner's home, the number of times his home was attacked, inconsistencies in dates, and events that were described in the application that were omitted during testimony. Nwakanma, 126 Fed.Appx.at 701. This Court held that the inconsistencies were "irrelevant and do not support an adverse credibility finding." Id. at 702.

Similarly, in the instant case, the minor inconsistencies discussed above are irrelevant and do not support a finding of incredibility. The only grounds cited by the IJ in finding a lack of credibility were "minor inconsistencies that reveal nothing about [Bah's] persecution and therefore are an inadequate basis for an adverse credibility finding." Huang, 113 Fed.Appx. 695, at 700. Thus, the IJ's finding of incredibility is not based on substantial evidence and is reversed.

The second basis for the IJ's determination was that he found that Bah did not demonstrate by clear and convincing evidence that he timely filed his asylum application. The IJ found that Bah's testimony was unclear as to his date of entry into the United States. Bah testified that he arrived on September 14, 2000, while his application stated that he arrived on September 30, 2000. Petitioner testified that he tried to correct the entry date with the asylum officer, and, in fact, the application shows the corrected date. Thus, there was really no discrepancy at all. Moreover, it is significant that Petitioner's application was timely, regardless of which date was correct. An alien must file an application within one year of entry into the United States. Bah's application was filed on December 14, 2000. Whether he arrived on September 14, 2000 or September 30, 2000, he was well within the one-year time limit. Therefore, the IJ's finding concerning timeliness is not supported by the evidence.

The Government argues that we do not have jurisdiction to review the IJ's determination that Petitioner's asylum application was not timely filed. Section 208(a)(3) of the Immigration and Naturalization Act provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" as to whether an asylum application was timely filed. 8 U.S.C. § 1158 (a)(3). Citing Gjyzi v. Ashcroft, 386 F.3d 710 (6th Cir. 2004), Petitioner contends that there is no reasoned

basis for the determination and, thus, due process requires us to review the IJ's determination of the untimeliness of Bah's asylum application. In Gjyzi, as in the instant case, the IJ found that, because of the incredibility of the applicant, there was not clear and convincing evidence to support a finding that the applicant had filed his application for asylum within one year of his arrival in the United States. Id. at 713. However, in Gjyzi, when the BIA reviewed the IJ's order, it reversed the IJ's adverse credibility finding but affirmed the IJ's determination that the application was untimely. Id. On appeal, this Court found that once the BIA reversed the IJ's credibility findings, there was no longer a "reasoned basis" to hold that the application was untimely. Id. at 715. Thus, the Court stated that it was not reviewing the timeliness determination, but rather, a legal error made by the BIA. Id.

In the instant case, the BIA affirmed the IJ's findings concerning both credibility and timeliness. Therefore, the BIA did not make the type of legal error considered in Gjyzi. As such, Petitioner is not requesting that we review a legal error made by the BIA, but is requesting review of the timeliness determination, over which we do not have jurisdiction. However, because we conclude that the IJ did not have substantial evidence to find that Bah was incredible, the timeliness determination should be reexamined upon remand based upon the evidence proffered, specifically, the I-94 card and plane ticket used by Bah to enter the United States, which were entered into evidence without objection, as well as Bah's unrebutted testimony.

The third conclusion of law upon which the IJ based his decision was that the testimony concerning Bah's captures appeared to the IJ to be recruitment by the RUF to "bolster their ranks," rather than retribution for opposing political opinion. However, the IJ did not address the treatment

that Bah received after capture. It is possible that he was captured to bolster the ranks of the RUF, but was beaten and tortured after the captures because of his political opinions and those of his father.

The IJ's fourth basis for his decision was that he questioned Bah's own participation in the persecution of others by the RUF. However, that finding was expressly overturned by the BIA. Although the BIA affirmed the decision of the IJ without opinion, it reversed the IJ's finding that Bah may have participated in the persecution of others by the RUF.

Finally, the IJ stated that the situation in Sierra Leone described by Bah sounded more like civil strife, which does not always require a grant of asylum, than persecution based on political opinion. See 8 C.F.R. § 1208.13(b)(1). However, the IJ not only referred to the acts performed by the RUF as persecution, but suggested that Petitioner participated in the acts of persecution. Furthermore, the IJ recognized that the citizens of Sierra Leone "have turned on one another in sometimes unspeakably cruel ways." Moreover, as noted above, the IJ considered only the RUF's purpose for capturing Bah, not its purpose for his mistreatment following capture. We believe that the IJ needs to examine that treatment and what motivated it before determining whether or not Bah was persecuted or if he has a well-founded fear of future persecution based on his political opinion.

Accordingly, the Court holds that the IJ's determinations were not supported by substantial evidence. Thus, Petitioner's request for asylum is remanded for further review consistent with this opinion.

B.  Withholding of Removal

The Court must "uphold the BIA's determination against withholding the removal of an alien, unless it is 'manifestly contrary to the law.'" Castellano-Chacon v. I.N.S., 341 F.3d 533, 552 (6th Cir. 2003) (quoting Ali v. Reno, 237 F.3d 591, 596 (6th Cir. 2001)).  Moreover, "all administrative findings of fact are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id.

To qualify for withholding under the INA, an applicant must demonstrate that there is a clear probability that he would be subject to persecution if he were returned to the country he fled "because of [his] race, religion, nationality, membership in a particular social group, or political opinion." Id. at 545 (quoting 8 U.S.C. § 1231(b)(3)(A)).  Thus, the applicant must establish that "it is more likely than not that he or she would be persecuted" based on one of the five factors.  8 C.F.R. § 208.16(b)(2).  The burden of proof for establishing persecution for withholding purposes under the INA is clear probability, which is a more burdensome standard than the asylum standard of a reasonable possibility.  Castellano-Chacon, 341 F.3d at 545.

In considering Bah's eligibility for withholding, the IJ determined simply that, because Bah did not qualify for asylum, it would not be possible for him to meet the higher burden required for withholding.  However, as discussed above, the IJ's bases to find that Petitioner was not credible were not supported by substantial evidence.  Because we are reversing the findings concerning Bah's eligibility for asylum, upon remand, the IJ should reconsider the question of withholding eligibility for the reasons stated above.

## IV.  CONCLUSION

For all of the reasons set forth above, we **GRANT** the petition, **VACATE** the decision of

the BIA, and **REMAND** for further proceedings to determine whether Bah is entitled to the relief

he seeks.