# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2301
_____

| | | |
|---|---|---|
| Tarek Bejet-Viali Al-Jojo | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review |
| | * | of an Order of the |
| Alberto Gonzales, Attorney General | * | Board of Immigration Appeals |
| of the United States; Tom Ridge, | * | |
| Secretary of Homeland Security, | * | |
| | * | |
| Respondents. | * | |

_____

Submitted: June 22, 2005
Filed: September 27, 2005
_____

Before ARNOLD, McMILLIAN and COLLOTON, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

Tarek Bejet-Viali Al-Jojo (petitioner) petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of removal, or protection under the United Nations Convention Against Torture (CAT). In re Tarek Bejet-Viali Al-Jojo, No. A70-183-303 (B.I.A. Apr. 28, 2004) (per curiam) (hereinafter "BIA Order") (affirming and adopting decision of the immigration judge (IJ), id. (Oct. 22, 2002) (hereinafter "IJ Decision")). In support of his petition, petitioner argues that the BIA erred in: (1) holding that the delay in his filing for asylum was not justified by exceptional circumstances and (2) ordering his

removal to Great Britain or, alternatively, Sierra Leone. For the reasons stated below, we deny the petition for review.

## Background

The following is a summary of the background facts as found by the IJ. <u>See</u> IJ Decision at 1-3. Petitioner, a native of Sierra Leone, first entered the United States with his mother, sister, and brother in 1992. They entered through Mexico without inspection and, at the time, did not have valid entry documents. On or about July 16, 1992, petitioner's mother filed a request for asylum. Her request was not granted, and she was referred to the Immigration Court with an order to show cause. Petitioner, a minor, was considered a derivative asylum claimant under his mother's request. A hearing on the asylum claims was scheduled in the Immigration Court. Before the appointed time, however, petitioner departed the United States. He was admitted into the United Kingdom on or about August 4, 1994, with a British overseas passport.

On April 10, 1995, the Immigration Court denied petitioner's derivative asylum claim *in absentia*. The Immigration Court ordered petitioner deported to Lebanon, the country listed as petitioner's place of citizenship on the show cause order previously issued to his mother.

Petitioner re-entered the United States on or about August 10, 1998. He was admitted into this country upon presenting his British overseas passport. The Immigration and Naturalization Service (INS)[1] mistakenly believed he could enter the United States under the Visa Waiver Pilot Program.

---

[1]The Immigration and Naturalization Service subsequently became the Department of Homeland Security.

On September 18, 2001, INS began removal proceedings against petitioner. Petitioner was charged with removability under 8 U.S.C. § 1227(a)(1)(A), (a)(1)(C)(i) and was ordered to appear before the IJ in Kansas City, Missouri.

Removal hearings were held before the IJ on January 22, 2002, and February 19, 2002. At the hearings, petitioner admitted the allegations of fact contained in the Notice to Appear, but denied that he was a citizen of Lebanon, denied being a citizen of Sierra Leone (his birth place), and denied being a citizen of Great Britain (where his deceased father had been a citizen). He explained that his family had been issued British overseas passports by the British Embassy in Sierra Leone because Sierra Leone was a British colony at the time. He also admitted working in the United States without authorization and entering the United States from Canada in August 1998 without valid entry documents or a nonimmigrant visa.

Upon consideration of the evidence presented, including petitioner's testimony, the IJ concluded that the government had established removability by "clear, convincing, and unequivocal" evidence. The IJ found petitioner deportable because he was not in possession of a valid nonimmigrant visa and was not entitled to admission under the Visa Waiver Pilot Program when he entered the United States in 1998. Secondly, the IJ found petitioner deportable for having worked in the United States without authorization. IJ Decision at 4.

The IJ next considered petitioner's application for asylum, withholding of removal, or protection under the CAT. The IJ noted that petitioner's application for asylum had been filed more than one year after his entry into the United States in 1998 and therefore was untimely. However, the IJ observed, the delay in filing of petitioner's asylum request could be excused if there were changed circumstances materially affecting petitioner's eligibility for asylum or extraordinary circumstances relating to the delay in filing the application.

The IJ initially concluded that, due to changed circumstances, the 1995 *in absentia* denial of petitioner's derivative asylum request as a minor did not bar his current request; however, it also did not excuse his delay in filing.

The IJ next turned to petitioner's argument that the delay in filing should be excused because of the likelihood he would be persecuted if deported to Sierra Leone. Petitioner maintained that, because of his mother's past role as a housekeeper for a former President of Sierra Leone, he was persecuted in Sierra Leone in 1992 and would likely be persecuted if returned there. The IJ concluded that petitioner "ha[d] not shown changed circumstances that materially affect[ed] his eligibility for asylum since returning to the United States in 1998" because, "[w]hile there have been a number of changing governments in Sierra Leone since [petitioner] departed, [petitioner] bases his fear of returning to Sierra Leone on events that occurred under a former government in 1992." Id. at 7.

The IJ also concluded that petitioner could not rely on his alleged marriage to a United States citizen as a basis for asylum where he had not presented any testimony from his wife nor shown that he had filed an I-130 application.

The IJ then explained:

In this case, [petitioner] has not presented a reasonable explanation for his failure to file a timely request for asylum. [Petitioner] may have been pursuing some other type of Immigration relief, but I do not find that it meets the extraordinary circumstances exception for the delay in filing. [Petitioner] was not suffering any serious illness or mental disability. Apparently, he consulted with an Immigration consultant prior to his apprehension by the [INS] in September 2001, and did not present any other evidence supporting the delay in his filing for asylum. This Court notes that [petitioner] was well aware of his right to file for asylum, having previously abandoned a request for asylum in Los Angeles, California in 1994. . . . [A]fter consideration of the totality of the

-4-

circumstances, I do not believe that [petitioner] meets either the changed circumstances or the exceptional circumstances exception for his failure to file within one year of arrival in the United States.

Id. at 9.

The IJ further determined, based on the evidence, that petitioner had been "firmly resettled" in Great Britain prior to entering the United States in 1998. Finally, the IJ noted that, even if petitioner were not barred from asylum by the one-year filing deadline nor precluded because of his firm resettlement in Great Britain, he still could not establish that he was a refugee within the statutory definition. The IJ concluded: "While [petitioner] may 'subjectively fear' returning to Sierra Leone, I do not find any 'reasonably objective evidence' that would support a well-founded fear of future persecution. Therefore, the request for asylum must be denied." Id. at 16. The IJ additionally held that petitioner had failed to satisfy the even higher standard of proof for establishing withholding of removal or protection under the CAT. Accordingly, the IJ denied petitioner's request for relief in its entirety and ordered him removed to Great Britain or, alternatively, Sierra Leone. Id. at 17-18.

Petitioner appealed the IJ's decision to the BIA. Upon review, the BIA affirmed, explaining as follows:

> As we do not find the Immigration Judge's factual findings to be clearly erroneous, we affirm and adopt the Immigration Judge's October 22, 2002, decision. See Matter of Burbano, 20 I&N Dec. 872, 874 (BIA 1994) (noting that adoption or affirmance of a decision of an Immigration Judge, in whole or in part, is "simply a statement that the Board's conclusions upon review of the record coincide with those which the [I]mmigration [J]udge articulated in his or her decision"); see generally 8 C.F.R. § 1003.1(d)(3)(i) (2003) (stating that the Board shall review factual determinations, including credibility findings, "only to

determine whether the findings of the immigration judge are clearly erroneous.").

BIA Order at 1. This petition for review followed.

## Discussion

*Asylum*

Petitioner challenges the BIA's determination that he failed to show exceptional circumstances to excuse his failure to apply for asylum within the one-year time limit under 8 U.S.C. § 1158(a)(2)(B). As a threshold matter, we consider the government's argument that we lack jurisdiction to review this issue. See Brief for Appellee at 19 (citing Somakoko v. Gonzales, 399 F.3d 882, 883-84 (8th Cir. 2005) (Somakoko); Ismailov v. Reno, 263 F.3d 851, 855 (8th Cir. 2001) (Ismailov)).

Section 1158(a) of Title 8, United States Code, provides in relevant parts:

**(a) Authority to apply for asylum**

  **(1) In general**

   Any alien who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title.

  **(2) Exceptions**

                    . . . .

  **(B) Time limit**

Subject to subparagraph (D), paragraph (1) shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States.

**(C) Previous asylum applications**

Subject to subparagraph (D), paragraph (1) shall not apply to an alien if the alien has previously applied for asylum and had such application denied.

**(D) Changed circumstances**

An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (C), if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B).

**(3) Limitation on judicial review**

*No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2).*

8 U.S.C. § 1158(a) (emphasis added).

The statutory language above plainly excludes our jurisdiction to review the BIA's determinations that: (1) petitioner's application for asylum was not filed within one year after his arrival in the United States; (2) no changed circumstances materially affected his eligibility for asylum; and (3) the untimeliness of his filing was

not justified by extraordinary circumstances. See Ismailov, 263 F.3d at 855 ("§ 1158(a)(3) clearly indicates congressional intent to preclude judicial review of decisions made pursuant to § 1158(a)(2), notwithstanding any other provision in the statute. Accordingly, we conclude that we have no jurisdiction to address Ismailov's claim that the Board erred by determining that he did not demonstrate extraordinary circumstances related to his untimely application for asylum.").

In oral argument before this court, petitioner argued that we have jurisdiction in the present case to review the BIA's decisions made pursuant to § 1158(a)(2) because he has raised a procedural due process challenge. According to petitioner, the language of the BIA's order indicates that the BIA was adopting only the IJ's findings of fact, not its conclusions of law. See BIA Order at 1 ("As we do not find the Immigration Judge's factual findings to be clearly erroneous, we affirm and adopt the Immigration Judge's October 22, 2002, decision."). Based upon this interpretation of the BIA's order, petitioner suggests that he has been denied meaningful review of the IJ's legal conclusions, resulting in a deprivation of procedural due process. In support of this argument, petitioner cites Gjyzi v. Ashcroft, 386 F.3d 710, 714 (6th Cir. 2004) ("In this case, the denial of asylum to Gjyzi based on the timeliness of his asylum application may be correct or incorrect, but at present, it lacks an actual or divinable reasoned basis, which raises due process concerns and compels us to vacate the order denying asylum and to return the case to the immigration authorities for further explanation."). Petitioner also contends that Somakoko, 399 F.3d at 883-84, cited by the government, is not a contrary decision.

In Somakoko, this court acknowledged the possibility of an exception to the jurisdictional bar in § 1158(a)(3) for claims alleging a deprivation of procedural due process. 399 F.3d at 883 ("[C]ourts are understandably reluctant to conclude that Congress intended to preclude all judicial review of constitutional issues, including procedural due process claims."). However, in that case, we determined that the petitioner's due process claim was without merit. Consequently, it was unnecessary

to decide at that time "the troubling question whether relief from an untimeliness ruling may *ever* be granted on procedural due process grounds." Id. at 883 (emphasis original). Similarly, in the present case, petitioner's due process claim is clearly without merit. Contrary to petitioner's argument, there is no basis on which to conclude that the BIA failed to review the legal analysis and conclusions of the IJ. Indeed, the BIA specifically cited Matter of Burbano, 20 I&N Dec. 872, 874 (BIA 1994), for the express proposition that "adoption or affirmance of a decision of an Immigration Judge, in whole or in part, is 'simply a statement that *the Board's conclusions upon review of the record coincide with those which the [I]mmigration [J]udge articulated in his or her decision'*." See BIA Order at 1 (citation and parenthetical) (emphasis added). Moreover, by specifically stating that it did not find the IJ's factual findings to be clearly erroneous, the BIA was not suggesting that it did not adopt the IJ's legal conclusions. The BIA was merely confirming that it understood its obligation to review the IJ's factual determinations for clear error, as further demonstrated by its reference to the pertinent regulation. See id. (citing 8 C.F.R. § 1003.1(d)(3)(i) (setting forth clear error standard of review)).

Accordingly, we hold that we lack jurisdiction to review the BIA's denial of petitioner's request for asylum.

*Countries for removal*

Petitioner separately argues that the BIA erred in ordering his removal to Great Britain or, alternatively, Sierra Leone. Petitioner argues that the designation of Great Britain or Sierra Leone was improper because the government presented no evidence that either country would accept him, and, moreover, he presented evidence indicating that neither Great Britain nor Sierra Leone " recognized [his] right to status." Brief for Appellant at 15. Thus, he concludes, to designate either Great Britain or Sierra Leone as a country for his removal violates 8 U.S.C. § 1231(b)(2)(E)(vii) and constitutes reversible error. Id. at 15-16.

Section 1231(b)(2)(E) of Title 8, United States Code, provides:

**(E) Additional removal countries**

If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:

   **(i)** The country from which the alien was admitted to the United States.

   **(ii)** The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.

   **(iii)** A country in which the alien resided before the alien entered the country from which the alien entered the United States.

   **(iv)** The country in which the alien was born.

   **(v)** The country that had sovereignty over the alien's birthplace when the alien was born.

   **(vi)** The country in which the alien's birthplace is located when the alien is ordered removed.

   **(vii)** If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

8 U.S.C. § 1231(b)(2)(E).

In the present case, petitioner declined to designate a country for removal under 8 U.S.C. § 1231(b)(2)(A). Under the circumstances, the IJ designated Great Britain

-10-

as the primary country for removal based upon petitioner's testimony that he lived in Great Britain for four years before entering the United States and, as an alternative, Sierra Leone based on petitioner's testimony that he was born in Sierra Leone.

Section 1231(b)(2)(E) establishes that an alien may be removed to a country of which he or she is neither a citizen, a national, nor a subject. Moreover, the Supreme Court recently confirmed that an alien may be removed under any of subsections (i) through (vi) without the prior consent of the government of the country designated for removal. Jama v. Immigration & Customs Enforcement, 125 S. Ct. 694, 698-706 (2005) (holding that, under § 1231(b)(2)(E)(iv), an alien may be removed to the country in which he or she was born even if that country's government has not given its prior consent).

Accordingly, we hold that the BIA did not err in ordering petitioner removed to Great Britain or, alternatively, Sierra Leone.

## Conclusion

For the reasons stated, the petition for review is denied.

_____