RYAN, Circuit Judge.
Petitioners, Ivzi Nazarko, Adriatik Nazarko, Ivzjol Nazarko, and Miranda Nazarko (“Nazarko, et al.”), appeal an order of the Board of Immigration Appeals (BIA) adopting and affirming an Immigration Judge’s (IJ) denial of Nazarko, et al.’s claim for asylum, withholding of removal, and protection under the Convention Against Torture. Because we find substantial evidence supports the IJ’s deci *392 sion, we DENY Nazarko, et al.’s petition for review.
I.
Nazarko, et al. are citizens of Albania. Ivzi is Adriatik’s father; Ivzjol and Miranda are Adriatik’s wife and child. They separately entered the United States on nonimmigrant visitor visas in the late 1990s. Ivzi entered on June 19, 1997, and Adriatik arrived on August 5, 1996, while his wife and child came later. In late 1997, the Immigration and Naturalization Service (INS) issued notices for Nazarko, et al. to appear at deportation hearings, as they had overstayed their nonimmigrant visitor visas.
At the hearing Ivzi and Adriatik Nazarko testified that they suffered persecution in Albania because, they said, they came from a wealthy family and were involved in political activities during and after the communist government. On their asylum applications both men checked that they had been persecuted on the basis of political belief and on the basis of social status. Ivzi and Adriatik each also began their application statements by noting that their family along with other wealthy families had been labeled “Kulak” by the communists — a derogatory name that put them “at the bottom of the social strata.” Their testimony described persecution that took place over several decades, much of it under the communist regime that was hostile to the Nazarko family and other “Kulak.”
Adriatik also testified that he had been persecuted since the fall of the communist government, and in particular, that he was beaten by Democratic Party “gang members,” who also damaged his restaurant. Ivzi testified that he was beaten at a roadblock by the same men, members of the Socialist Party who were angry that Adriatik left Albania after the beating at the restaurant. Money was stolen from a safe during the restaurant attack, and Ivzi’s wallet was stolen during the roadblock attack. Ivzi and Adriatik also testified they were threatened with future harm during these attacks. They offered police reports of the incidents, which indicate that the unknown assailants, who were armed, inter alia, with a screwdriver, knife, and stones, “immediately” fled on both occasions at the approach of ordinary “citizen[s]” and “peasants.”
The IJ issued an oral decision on October 9, 2003, concluding that the petitioners were not credible and failed to meet the “well-founded fear” standard of a petition for asylum claim or the “clear probability” standard of a withholding of removal claim. An appeal was made to the BIA, which adopted and affirmed the decision of the IJ. In addition to affirming the IJ’s finding that the parties failed to make the necessary showing to warrant relief, the BIA also held in a footnote that Adriatik’s asylum application was untimely. Nazarko, et al. now appeal that decision to this court, claiming the BIA erred.
II.
“Because the BIA adopted the IJ’s reasoning with respect to [Nazarko, et al’s] ... claims for asylum and withholding of removal, we review ... the IJ’s decision directly.” Singh v. Ashcroft 398 F.3d 396, 401 (6th Cir.2005). The IJ’s legal conclusions are reviewed de novo, and the factual findings are reviewed for substantial evidence. Tapucu v. Gonzales, 399 F.3d 736, 738 (6th Cir.2005). We must uphold the IJ’s determination that an alien is not eligible for asylum if the decision is “supported by reasonable, substantial, and probative evidence on the record considered as a whole,” and it can be reversed only if “a reasonable factfinder would have to conclude that the requisite fear of persecution existed.” INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 *393 (1992) (internal quotation marks and citation omitted).
Under the Immigration and Nationality Act (INA), the Attorney General has discretion to grant asylum to a “refugee.” 8 U.S.C. § 1158(b)(1)(A). The INA defines a “refugee” as an alien who is “unable or unwilling” to return to his country of origin “because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1101(a)(42)(A). An applicant for asylum bears the burden of establishing that the “well-founded fear of persecution” is “both subjectively genuine and objectively reasonable.” Akhtar v. Gonzales, 406 F.3d 399, 404 (6th Cir.2005) (citation omitted).
To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3)(A), the applicant must establish a “clear probability of persecution” by showing that it is more likely than not that he will be persecuted. INS v. Stevic, 467 U.S. 407, 413, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). To qualify for withholding under the Convention Against Torture, the applicant must “establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.” 8 C.F.R. § 208.16(c)(2). The torture need not be on account of a protected ground. Castellano-Chacon v. INS, 341 F.3d 533, 551-52 (6th Cir.2003).
Nazarko, et al. challenge several aspects of the IJ’s rejection of their petitions for asylum, claiming that the IJ made “ ‘inferences or presumptions that are not reasonably grounded in the record’ ” and that the record “ “would compel a reasonable factfinder to make a contrary determination.’ ” (Citations omitted.) It is apparent, however, that the record on the whole shows that the IJ’s decision rests on substantial evidence.
First, the IJ relied on the 2001 U.S. Department of State Profile of Asylum Claims and Country Conditions for Albania, which states that, despite the prevalence of crime and police corruption, “[t]here is virtually no evidence that individuals are targeted for mistreatment on political grounds.” Report, at 4 (May 2001). Nazarko, et al. contest this reliance, claiming the reports are “sugar coated” to downplay problems in Albania This statement is odd, not only because the report mentions widespread crime and blood feuds in Albania, but because it also ignores the fact that such reports are a source of information “we have relied on ... when reviewing an IJ’s decision.” Mullai v. Ashcroft, 385 F.3d 635, 639 (6th Cir.2004). The IJ’s reliance in this case is entirely appropriate.
Second, the IJ found that the testimony of Ivzi and Adriatik about the attacks was not “consistent” and specifically not “credible.” This is amply supported by the transcript of the hearing, where Ivzi stated the restaurant attack was conducted by socialists who were angered by the family’s membership in the democratic party, but Adriatik stated the attackers were themselves associates of the democratic party. It is hard to imagine a scenario where both of these statements could be accurate. Adriatik’s statements lack even internal consistency. His 1997 application statement relates that “a group of young gangsters” tried to Mil him because he and “a few of [the] other peasants ... tried to stop them from performing acts of vandalism.” He mentions that they are “perhaps connected to the Mafia Organization who want to bring back Communism.” This differs from his 1998 statement, where they are dubbed “the Group of Five Shops,” who “escort the President” and were organized by the “Democratic Party.” By the time of his testimony in 2003, *394 Adriatik agreed to call the men “the Five Stars Gang” and claimed they spent “every day and every night” with the Democratic Party.
The same is true for Ivzi, who said in his 1997 asylum statement that those who threatened his family after Adriatik left demanded money, specifically “50.000$.” When asked during his 1998 testimony, however, if there was anything he “could have done that would have changed their minds,” his response did not mention money, but said those who threatened him would be satisfied only if he were “to give [up] the democracy and join them.” Some slight additional support for the IJ’s credulity determination also derives from the IJ’s statement to a Nazarko family member attending the hearing, apparently Ivzi, that it was inappropriate to “signal answers to your son while he’s testifying” and threat to remove Ivzi from the courtroom. In light of these considerations, we think there is substantial evidence to support the IJ’s asylum decision and certainly, we are not compelled by the evidence to conclude otherwise.
It necessarily follows, then, that the record cannot compel the more stringent “clear probability” finding required for a withholding of removal claim under 8 U.S.C. § 1231(b)(3)(A). See Pilica v. Ashcroft, 388 F.3d 941, 951 (6th Cir.2004). We are also left with the conclusion that substantial evidence supports the IJ’s decision to deny Nazarko, et al. protection under the Convention Against Torture because the record fails to establish that it is “more likely than not” that Nazarko, et al. will be tortured if forced to return to Albania. 8 C.F.R. § 1208.16(c)(2).
III.
Lastly, we note that Adriatik challenges the BIA’s finding that his asylum application was untimely. Timeliness determinations are normally beyond the jurisdiction of this court, per 8 U.S.C. § 1158(a)(3), but Adriatik argues that this case falls under the exception made in Gjyzi v. Ashcroft, 386 F.3d 710 (6th Cir.2004). We think the facts of this case are distinguishable from Gjyzi, wherein the BIA reversed the IJ’s adverse credibility finding, but upheld, without explanation, the IJ’s timeliness ruling that had been based solely on the adverse credibility finding. See id. at 714. No such facts are presented here, where the BIA based its footnote on Adriatik’s dates of entry and application. Whatever due process requirements exist by virtue of 8 C.F.R. § 208.4(a) appear to have been met here. At the hearing, the IJ specifically questioned Adriatik as to the date of his first application for asylum, why he did not make one sooner, and eventually established that Adriatik had first sought assistance from a paralegal. Additionally, we note that the exercise of jurisdiction over the timeliness issue would be fruitless in this case, where substantial evidence supports the IJ’s denial of Adriatik’s claim.
IV.
For the reasons set forth above, we DENY Nazarko, et al.’s petition for review.