NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0777n.06

No. 11-3870

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 18, 2012*

LEONARD GREEN, Clerk

CHEIKH NDIAYE,                                    )
                                                  )
        Petitioner,                               )
                                                  )
v.                                                )   ON PETITION FOR REVIEW
                                                  )   FROM AN ORDER OF THE
ERIC H. HOLDER, JR., Attorney General,            )   BOARD OF IMMIGRATION
                                                  )   APPEALS
        Respondent.                               )
                                                  )
                                                  )

Before:  NORRIS, McKEAGUE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge.  Cheikh Ndiaye petitions for review of a decision of the Board of Immigration Appeals denying his applications for asylum and withholding of removal.  We deny the petition.

I.

Ndiaye first applied for asylum on February 26, 2003.  His application stated that he is a native and citizen of Mauritania.  He also asserted the following facts:  In 1989, White Moor soldiers arrested him and his family on account of their race and ethnicity.  The soldiers detained him for one month, tortured him, and forced him into manual labor.  The soldiers then forcibly deported him to Senegal, aided by volunteers from the Red Cross.  He spent the next five years in a refugee camp in

Senegal, followed by 12 more years in Dakar, Senegal. He came to the United States through J.F.K. airport in New York City on March 26, 2002, aided by a man named "Modou."

The Department of Homeland Security rejected Ndiaye's asylum application on April 24, 2003, and initiated removal proceedings. DHS issued Ndiaye a Notice to Appear, charging that he had entered the United States at New York City on March 26, 2002 (as Ndiaye had stated in his asylum application) without a valid immigration document. Ndiaye admitted the allegations in the Notice and conceded removability. But he requested relief by filing another application for asylum, *see* 8 U.S.C. § 1158, as well as applications for withholding of removal, *see* 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture, *see* 8 C.F.R. § 1208.16(c).

After a hearing, at which Ndiaye was the only witness, the Immigration Judge denied all requested relief. The IJ found that Ndiaye did not show his asylum application to be timely and did not support his other applications with credible evidence. The IJ therefore ordered Ndiaye removed to any country willing to accept him. The Board of Immigration Appeals affirmed the denial of relief, but remanded for the IJ to designate a country of removal. The IJ ordered Ndiaye removed to Mauritania, and the BIA affirmed. Ndiaye then filed this petition.

II.

Ndiaye first argues that the IJ should have treated his asylum application as timely. The IJ determined that Ndiaye had no evidence to support his assertion that he entered the United States on March 26, 2002. Thus, the IJ said, Ndiaye could not establish that his original asylum application—filed February 26, 2003—was filed within one year of his arrival in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). This court lacks jurisdiction to review that factual determination. *Id.*

§ 1158(a)(3); *El Moussa v. Holder*, 569 F.3d 250, 254 (6th Cir. 2009). We may, however, review constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D); *Fang Huang v. Mukasey*, 523 F.3d 640, 650–51 (6th Cir. 2008).

Ndiaye argues that the IJ's ruling denied him due process. He relies on our decision in *Gjyzi v. Ashcroft*, 386 F.3d 710, 714 (6th Cir. 2005). But that case found a due-process violation because the BIA left intact an IJ's timeliness determination that lacked any rational basis. *Id.* Here, the IJ offered a reasoned basis for its finding—a lack of evidence. So *Gjyzi* does not apply.

Ndiaye also argues that the IJ committed a legal error in failing to hold the government to its allegation in the Notice to Appear that Ndiaye entered the country on March 26, 2002—a fact that, if accepted, would make his petition timely. The Ninth Circuit has held that an arrival date in a Notice to Appear may indicate that the government views the date as undisputed. *See Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008). But the statute places the burden on the petitioner to prove his arrival date "by clear and convincing evidence." 8 U.S.C. § 1158(a)(2)(B). And even the Ninth Circuit has recently clarified that the government is free to contest an alien's arrival date—notwithstanding the Notice to Appear—where the government gives notice to the petitioner of its intent to do so. *See Cortez-Pineda v. Holder*, 610 F.3d 1118, 1122 (9th Cir. 2010). Thus, we agree with the Second Circuit that the Notice to Appear may serve as corroborative evidence of the petitioner's arrival date, but that it does not itself carry the petitioner's burden. *See Zheng v. Mukasey*, 552 F.3d 277, 286, 286 n.5 (2d Cir. 2009).

The IJ was not legally required to adopt the arrival date in the Notice to Appear. We therefore cannot review the IJ's finding that Ndiaye's petition was untimely.

III.

Ndiaye also challenges the IJ's determination that he failed to establish his identity and national origin. Here again, Ndiaye has the burden to establish his entitlement to relief. 8 U.S.C. § 1231(b)(3)(C). The IJ's determinations about identity and national origin "go to the heart of his claim" for withholding of removal. *Mullaj v. Gonzales*, 186 F. App'x 574, 576–77 (6th Cir. 2006). They are therefore "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also El-Moussa*, 569 F.3d at 255–56. (Ndiaye filed his original asylum application in 2002, so he is not subject to the stricter standard of the REAL ID Act of 2005. *See Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006).)

The only evidence that Ndiaye submitted to establish his identity and national origin was a Mauritanitan national identity card. But this card is suspect in several respects. It is dated March 11, 1991, when Ndiaye claims he was already living in the refugee camp in Senegal. Ndiaye says that Red Cross volunteers had him fill out a blank form, then took the form to Mauritania and obtained the card on his behalf. But the IJ was rightly skeptical that Mauritanian authorities would issue a Mauritanian identity card—listing Russo, Mauritania as the holder's residence—to a proxy for a forcibly deported person currently living as a refugee in Senegal. The card also lists a birth certificate number for the holder, even though Ndiaye stated that he did not have his birth certificate at the refugee camp. And the card's signature line is missing the signature of the government official who supposedly issued it.

Ndiaye responds that the IJ mistakenly relied on *Matter of O-D-*, 21 I. & N. Dec. 1079, 1081 (BIA 1998), by treating his identity card as counterfeit without a forensic analysis. But the IJ never

found that the card was counterfeit; it merely found reasons to doubt that the card genuinely belonged to Ndiaye. That determination was reasonable.

Ndiaye also made no attempt to have his family members corroborate his story, even though he claims that they, too, were forcibly deported to Senegal. Ndiaye stated that he has regular contact with his family members. That they do not typically write him letters does not show that they could not support his claims. The absence of such corroborative evidence—evidence that one would expect to see in a case like this—supports the IJ's adverse determination. *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004).

Ndiaye's proffered "plausible" explanations for the discrepancies noted by the IJ do not compel the conclusion that the IJ acted unreasonably. *Shkabari v. Gonzales*, 427 F.3d 324, 330 (6th Cir. 2005).

The petition for review is denied.