NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0860n.06
Filed: October 19, 2005

No. 04-3369

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LULZIM FLAMUR DUSHI,

    Petitioner-Appellant,

v.

ALBERTO GONAZLES,
UNITED STATES ATTORNEY GENERAL,

    Respondent-Appellee.

ON PETITION FOR REVIEW FROM
A FINAL ORDER OF THE BOARD OF
IMMIGRATION APPEALS

_____/


BEFORE:    CLAY and GIBBONS, Circuit Judges, and STEEH, District Judge.[*]

    **CLAY, Circuit Judge.** Petitioner, Lulzim Flamur Dushi, is an Albanian citizen who petitions for review from a decision of the Board of Immigration Appeals ("BIA"), affirming an order of an Immigration Judge ("IJ") which denied Petitioner's claims for withholding of removal pursuant to Immigration and Naturalization Act ("INA"), Section 241(b)(3), 8 U.S.C. § 1231(b)(3), and withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention Against Torture") pursuant to 8 C.F.R. § 208.16(c) *et seq.*

---

[*]Honorable George Caram Steeh, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

For the reasons set forth below, we **DENY** the petition for review.

# I. BACKGROUND

## A. Procedural History

Petitioner Lulzim Flamur Dushi ("Dushi") applied for asylum and withholding of removal under the Immigration and Nationality Act ("INA") in April 1999. On November 2, 2000, Dushi was charged with being removable from the United States under Section 212(a)(6)(A) of the INA and ordered to appear before an immigration judge. At a hearing before Immigration Judge ("IJ") Elizabeth Hacker in Detroit on July 13, 2001, Dushi, through his attorney, conceded removability and asserted that he would be seeking asylum and withholding of removal under the INA and protection under the United Nations Convention Against Torture. A hearing on Dushi's claims was held on November 20, 2002, at which Dushi and his mother testified. In an oral decision issued the same day, the IJ denied all of Dushi's claims for relief. The IJ found that his application for asylum was untimely as he could not establish that it was filed within one year of his arrival in the United States, as required by 8 U.S.C. § 1158(a)(2)(B), and that he had not met the statutory requirement to excuse this missed deadline, of "changed circumstances which materially affect eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period." 8 U.S.C. § 1158(a)(2)(D). The IJ also found that his application for asylum would fail in any event because Dushi had not established past persecution or a well-founded fear of future persecution. The IJ denied Dushi's request for withholding of removal and protection under the Convention Against Torture on the merits. Among other findings, the IJ found the testimony of Dushi and his mother not to be credible.

Dushi appealed to the Board of Immigration Appeals ("BIA") for review. The BIA dismissed his appeal on February 27, 2004. The BIA agreed with the IJ that Dushi's petition for asylum was untimely and that Dushi had failed to establish persecution or a well-founded fear of future persecution on account of membership in a protected group. The BIA affirmed the IJ's determination that Dushi had not established that it was more likely than not that he would be tortured if returned to Albania. The BIA adopted the decision of the IJ and affirmed based on the reasons set forth in her decision.

Dushi petitioned this court for review of the BIA's decision on March 22, 2004. Presumably because this Court is without jurisdiction to review the determination that his asylum petition was untimely, *see Gjyzi v. Ashcroft*, 386 F.3d 710 (6th Cir. 2004) (citing 8 U.S.C. § 1158(a)(3)), Dushi does not challenge the denial of asylum in his brief to this Court.

**B.      Substantive Facts**

**1.      Petitioner's Asylum Application**

In an affidavit submitted in connection with his asylum application, Dushi averred that he was born in Albania and came to the United States with his mother on December 25, 1998. He asserted that he had been arrested, beaten, and deprived of food because of his public support of the Democratic Party in Albania and his involvement with the Anti-Communist Association.

Dushi stated that his family had never supported Communism, and that his maternal grandfather was sentenced to fifteen years in prison and tortured because of his open opposition to the Communist Party. Dushi stated that his parents actively demonstrated for democracy. Dushi averred that in March of 1991, police came to his family's home and "violently" led his father away.

His father returned the next day bruised and bleeding. Dushi asserted that in April 1991, his parents attended another demonstration. His mother was severely beaten by police and hospitalized for ten days. His father was shot several times and beaten, and died on May 5, 1991.

Dushi conceded in his affidavit that the Democratic Party, which his family supported, came into power in March 1992 but insists that "communism remained a threat. Everything worked the same way. Nothing had changed. The corruption and police brutality continued." In June 1997, the Socialist Party returned to power. In September 1998, a prominent democratic leader, Azem Hadjari, was killed. Dushi asserted that he and his uncle participated in Hadjari's funeral, and that a pro-democracy demonstration was held on the day of his funeral. According to Dushi, the demonstration became violent, and he and three friends were arrested and taken to the police station. Dushi stated that they were beaten and deprived of food for 24 hours.

Dushi averred that he and his mother then hid with various relatives for three months, finally leaving Albania on December 20, 1998. Dushi stated that they traveled to Macedonia, Switzerland, Canada, and finally the United States, where they arrived on December 25, 1998.

### 2. Witness Testimony

Dushi's mother, Lajla Dushi, testified as Dushi's only other witness at the hearing.[1] She testified that she participated in the "December 13th" organization "of ex-persecuted people." She

---

[1]The IJ included the following footnote in her decision: "The respondent testified that the woman who testified before this Court was indeed his mother. However, the individual who testified had no identification, although she asserts that she is a lawful permanent resident of the United States who is the possessor of temporary evidence of permanent residency. She had no State of Ohio documentation establishing even a name or address, or any Immigration documentation establishing her identity." During the hearing, the IJ told Dushi's attorney: "counsel, how do you expect me to listen to this testimony? I will certainly will listen to it, counsel, but whether I give it any weight, since we don't know who this woman is."

stated that she participated in peaceful demonstrations beginning in 1990. She joined these protests because she was against communism.

Ms. Dushi testified that at some point in 1991, the police came to the family's home and arrested her husband. He returned twenty-four hours later after having been tortured by police because he was anti-communist.

Ms. Dushi testified that she and her husband attended another pro-democracy demonstration in April 1991. The police hit her on the head, causing her to lose consciousness for twenty-four hours. Her husband was shot, went into a coma, and died in May 1991.

Ms. Dushi testified that on September 14, 1998, her son attended the funeral of "one of founders of Democratic Party" – presumably Hadjari. Ms. Dushi did not attend. She testified that her son returned the next day with a black eye and bruises on his face and body. She testified that he had gone to the funeral "[b]ecause of his hate for socialists and because that's the reason that his father would [sic] died."

After Petitioner returned, Ms. Dushi decided to leave Albania because she was afraid her son would be killed. According to her testimony, she and Dushi left Albania and went to Macedonia for two days. From there, they flew to Switzerland. From Switzerland they traveled to Canada. Ms. Dushi testified that she did not have a passport; rather, "the person who accompanied us had the passport. He submitted the passport to the immigration." Once in Canada, they came to Detroit in a truck, and then traveled by bus to Cleveland. Ms. Dushi testified that they arrived in the United States on December 25, 1998.

On cross-examination, Ms. Dushi testified that she paid $9,000 each for her and her son for their trip from Macedonia to the United States. She testified that her son was never a member of the Democratic Party. On questioning from the IJ, Ms. Dushi stated that she did not know who had shot her husband or struck him on the head. Ms. Dushi stated that she did not apply for asylum in Canada or Switzerland because she wanted to come to the United States. She stated that she had intended to come to the United States "forever," but denied that she came in order to join her daughter and grandchildren.

### 3.    Petitioner's Testimony

Dushi testified that he hates the Communist Party and Socialist Party because they killed his father and grandfather and hurt his mother. He testified that the Communist Party killed his father because the family was anti-communist. His father told him that "we want to be free in a free country" and that his father hated the communist government.

Dushi testified that he does not know the name of the person or people who killed his father. Dushi first attended a demonstration with his mother when he was eleven. In 1998, he attended the funeral of Azem Hadjari, which turned into a demonstration, with his uncle and his friends Molla and Edmon Idrizi. Dushi was detained by the police, put in a cell, and beaten often, everywhere on his body. The police also threatened to kill him. After he was released, Dushi returned home and told his mother what had happened. He and his mother left Albania. They went to Macedonia by car, where they stayed "for some days," and then flew to Switzerland. They remained in Switzerland for one day and then flew to Canada, where they also remained for one day. Dushi testified that he was traveling with his mother "and the person who took charge of us."

Dushi testified that they entered by the United States by car or by truck. They did not have to show any documents to any customs officers, because "the person who put the money, he took charge, he took care of everything." They entered the United States on December 25, 1998. Dushi explained that they were "hidden" in the truck where no one could see them. No customs officials looked inside.

Dushi believes he would have problems if he returned to Albania because the police have threatened to kill him and because his family is known for being anti-communist. Dushi was not a member of any political party in Albania. He testified that he would attend democratic events in Albania because he hates socialists and communists and wants freedom.

On cross-examination, Dushi stated that he has never read a book about Albanian history or politics. He stated that two of his friends were arrested following the Hadjari funeral. On questioning by the IJ, Dushi stated that he has no documents showing when he entered the United States or when he traveled through Europe, and does not know under what name he traveled. He testified that "the person who took the money, he had everything in his hand."

### 4. Statement by Petitioner's Uncle

Petitioner also submitted a statement from his uncle, who "declare[d] that on 14 September 1998, [I] have taken part together with my nephew Lulzim Flamur Dushi, at the burial of the deputy Azem Hajdari, in Tirane, and after that we have taken part together with the crowd at the demonstration of that day in the Square "Skenderbej", where we are striked with the hard menas (heavy ones) by the Police Forces."

### 5. State Department Report on Albania

According to the 2001 State Department Country Report on Albania, entered into evidence at the hearing as Exhibit 6, police in Albania "beat and otherwise abused suspects, detainees, and prisoners." The report states that the Democratic Party "credibly reported some incidents of police harassment of its members and of the dismissal of some of its members from official positions for political reasons." The report states that several people have been arrested and charged in connection with the murder of Hadjari.

## II. DISCUSSION

### A. Credibility of Petitioner and the Witness

#### 1. Standard of Review

"Credibility determinations are considered findings of fact, and are reviewed under the substantial evidence standard." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004) (citing *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004)). This Court will afford substantial deference to an IJ's adverse credibility determination. However, "the finding must be supported by specific reasons." *Id.* (citing *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 n.7 (6th Cir. 2004); *Gao v. Ashcroft*, 299 F.3d 266, 276 (3d Cir. 2002)). "[M]inor and irrelevant inconsistencies cannot constitute the basis for an adverse credibility determination." *Sylla*, 388 F.3d at 926. Rather, "[a]n adverse credibility finding must be based on issues that go to the heart of the applicant's claim." *Id.* In sum, this Court may reverse the IJ's credibility determination only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1254(b)(4)(B). *See also Yu*, 364 F.3d 703.

#### 2. Analysis

As an initial matter, Petitioner's contention that "[n]either the Immigration Judge nor the Board specifically made an adverse credibility finding", Pet. Brief at 13, is simply wrong. The IJ stated that "the Court finds the respondent's testimony and that of his witness not to be credible." The IJ engaged in an extensive discussion of credibility. The BIA adopted the IJ's decision in denying Dushi's petition for review.

The IJ's adverse credibility finding was based on the following omissions and inconsistencies:

(1)     First, the IJ noted the fact that Lajla Dushi presented no documents to establish her identity, "find[ing] this to be highly suspect since this is a hearing which has been long scheduled . . . ."

(2)     The IJ noted that while Petitioner's counsel argued that the Dushi family has a history of anti-communist "sentiment," no documents to support that claim were submitted.

(3)     The IJ noted that this statement and other documents submitted were copies, rather than original documents. "When questioned as to where the original documents were, counsel has indicated that they are in possession of respondents, but were not either authenticated or presented to the Court . . . the Court questions why the original documents were not presented so that a careful examination might be made. The only reasonable inference is that the failure to do so would somehow lead to intrinsic questions being raised about them considering the inconsistency and credibility findings in this case."

(4)     The IJ found Dushi's testimony to be inconsistent with his prior statements. She noted that he testified that following Hadjari's funeral, he and two friends were arrested. However, in his statement he named three friends with whom he was arrested.

(5)     The IJ noted that while Dushi testified that he attended demonstrations as a child, he was unable to offer any specifics. The IJ stated "[w]hile a child of those tender years might be permitted to some vagaries on the dates; nevertheless, these events were apparently not so frequent that he would be unable to articulate at least the number of times he attended."

(6)     The IJ found Dushi and his mother to be incredible in their accounts of their travel to the United States. Specifically, the IJ found it "implausible and not credible" that neither Dushi nor his mother had passports when they passed through immigration and customs checks in Macedonia, Switzerland, and Canada, and that they were unable to state the names under which they traveled. The IJ also noted that Dushi was unable to describe with any specificity the truck in which he and his mother allegedly traveled to the United States.

These inconsistencies represent substantial evidence to support the IJ's adverse credibility findings. Petitioner ignores many of these inconsistencies and contends that "the only inconsistency appears to be with the number of people that were with Petitioner at the 1998 demonstration," and insists that this inconsistency is minor. When viewed alone, this inconsistency may be picayune; however, the Court views this inconsistency in the context of all of the evidence the IJ considered

in her credibility determination. The Court cannot say that it is compelled to reach a decision contrary to that of the IJ based on the entirety of the evidence.

**B.      Petitioner's INA claim**

**1.      Legal Framework and Standard of Review**

Unlike a grant of asylum, a grant of withholding of removal under the INA,  Section 241(b)(3), 8 U.S.C. § 1231(b)(3), is not discretionary.  An applicant who meets the statutory and regulatory requirements must be granted withholding of removal.  *Klawitter v. INS*, 970 F.2d 149, 151 (6th Cir. 1992).  An applicant for withholding of removal must prove that his or her life or freedom would be threatened in the country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.16(b) (2005). Furthermore, an applicant for withholding of removal must show a "clear probability" of persecution.  Persecution on account of a protected ground must be more likely than not to occur in order for withholding of removal to be granted. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987).

If an applicant is determined to have suffered past persecution, a rebuttable presumption is created that his or her life or freedom would be threatened in the future.  8 C.F.R. § 208.16(b)(1). The government can rebut this presumption by presenting evidence of a fundamental change in circumstances in the proposed country of removal, such that the applicant's life or freedom would not be threatened or the applicant could avoid the threat to his or her life or freedom by relocating to another part of that country, and it would be reasonable under the circumstances to expect the applicant to do so. *Id.*

The denial of Dushi's claim for withholding of removal must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quoting *Mikhailevitch*, 146 F.3d at 388). "The petition for review may be granted only if the evidence presented 'not only supports a contrary conclusion, but indeed *compels* it.'" *Id.* (quoting *Klawitter*, 970 F.2d at 151-52)).

## 2. Analysis

The IJ's credibility determination is dispositive of Dushi's INA claim; however, even assuming Dushi is credible, his claim still fails.

Because the INA provides no definition of "persecution," this Court, "[i]n *Mikhailevitch v. INS,* 146 F.3d 384 (6th Cir.1998) . . . reviewed numerous cases from other circuits in an attempt to discern the meaning of the term within the context of the INA." *Gilaj v. Gonzales,* 408 F.3d 275, 284 (6th Cir. 2005). *Mikhailevitch* concluded that a claim of persecution will not lie where a petitioner establishes only "a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." 146 F.3d at 390. *Gilaj* explains that "*Mikhailevitch* has not been interpreted as 'suggesting that physical punishment is in all cases *sufficient* for finding persecution.'" *Gilaj*, 408 F.3d at 284 (quoting *Gjokic v. Ashcroft*, Nos. 02-3915, 02-3917, 2004 WL 1491638, at * 4 (6th Cir. June 29, 2004) (unpublished)) (citing *Mikhailevitch,* 146 F.3d at 390).

This Court has thus explained, albeit in an unpublished opinion, that "while even a single beating offends one's sense of civilized governmental conduct, a single beating does not *compel* a finding of persecution." *Gjokic,* 2004 WL 1491638, at *4 (citing *Dandan v. Ashcroft,* 339 F.3d 567,

574 (7th Cir. 2003)) ("being detained, beaten and deprived of food for three days did not compel a finding of persecution"); *Prasad v. INS,* 47 F.3d 336, 339-40 (9th Cir.1995) ("'[a]lthough a reasonable fact-finder *could* have found' a brief detention and beating requiring no medical care 'sufficient to establish past persecution . . . a fact-finder would [not] be compelled to do so'" ); *Kapcia v. INS,* 944 F.2d 702, 704, 707 (10th Cir.1991) ("being 'detained for a two-day period [and] interrogated and beaten' did not compel a finding of past persecution"); *Skalak v. INS,* 944 F.2d 364, 365 (7th Cir.1991) ("The function [of the past persecution inquiry] is to identify persecution so severe that perhaps a person should not be forced to return to the country in which she underwent it even if the danger of recurrence is negligible.").

The Court in *Gjokic* upheld a finding that petitioner had not been persecuted where he had been detained for several days following his attendance at a demonstration and who had been beaten by the police with rubber sticks, which caused bruising but no permanent injuries. *Gjokic,* 2004 WL 1491638, at *4. The court found that the IJ had properly considered the length of the detention, the severity of the physical harm, and "the context of the demonstration" that the alien had attended, i.e., the fact that the petitioner did not lead any demonstrations, did not speak at any demonstrations, and had not distinguished himself from the thousands of other demonstrators. *Id.* at *5.

This Court's decision in *Gjokic*, while unpublished, lends persuasive support to the IJ's determination that, even if Dushi were credible, he failed to establish past persecution. Like the petitioner in that case, Dushi established only one incident of violence at the hands of the authorities, which resulted in bruising but no permanent injuries. While these allegations are serious, they do not compel a finding of past persecution, particularly in light of the fact that Dushi, like the

petitioner in *Gjokic*, similarly failed to establish anything particularly notable about the context of his arrest and detention at the demonstration: he was not a leader of the demonstrations, did not speak at the demonstration, and indeed did not belong to any political organization except one which is a part of the Albanian government.

Dushi has not established past persecution. As a result, no presumption exists that he would be persecuted if returned to Albania.

The question then becomes whether Dushi, without the presumption, has established he is more likely than not to be persecuted if returned to Albania. He has not met this standard. As the IJ pointed out, "[T]here is no evidence that the Socialist Party of 1998 would seek to harm [Dushi] . . . ." This is the result of

> . . . a change of circumstances since the election of the Democratic Party in March of 1992, a significant change in circumstances in that Albania has undergone several elections, the most recent of which were deemed to be in accord with general international standards, whereby the Democratic Party and the Socialist Party exchanged power on several occasions.

The IJ based her reasoning on the Profile of Asylum Claims and Country Conditions as published by the Department of State. Dushi's response was the bald assertion that "[n]othing had changed." Such an assertion is insufficient to show that Dushi would more likely than not be subjected to persecution.

Dushi has not shown past persecution, nor has he shown a probability of future persecution. The IJ's decision to deny Dushi's INA claim was based on substantial evidence. As a result, his INA claim must fail.

**C.     Petitioner's Convention Against Torture claim**

### 1.     Legal Framework and Standard of Review

An applicant for withholding of removal under the United Nations Convention Against Torture must establish that it is more likely than not that he will be tortured in the proposed country of removal.  8 C.F.R. § 208.16(c)(2) (2005).  The applicant's testimony "if credible, may be sufficient to sustain the burden of proof without corroboration." *Id.*  In assessing the risk of torture, the adjudicator shall consider evidence of past torture inflicted on the applicant; evidence that the applicant could relocate to a part of the country where he is not likely to be tortured; evidence of "gross, flagrant, or mass violations of human rights;" and any other relevant information regarding conditions in the country of removal.  *Id.* § 208.16(c)(3).

 The regulations related to the Convention Against Torture define torture as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1).

This Court must uphold the IJ's denial of withholding under the Convention Against Torture unless it is "manifestly contrary to the law." *Ali v. Reno*, 237 F.3d 591,596 (6th Cir. 2001).

### 2.     Analysis

The IJ rejected Dushi's claim for relief under the Convention Against Torture simply by noting that he had "failed to establish that it is more likely than not that he would be tortured on one of the grounds cognizable under the regulations."  The IJ's determination was, of course, in part

predicated on her determination that his testimony was incredible; however, even if Dushi were credible, he still failed to make the requisite showing.

As an initial matter, a petitioner who is unable to make out a claim for withholding of removal under the INA based on past persecution is unlikely to be entitled to relief under the Convention Against Torture. If the detention and beating occurred as Dushi describes, undoubtedly the experience was frightening and painful, but it did not constitute torture because he has presented no evidence meeting the statutory definition of "severe pain or suffering." 8 C.F.R. § 208.18(a)(1). The abuse alleged in this case, while certainly serious, does not appear to be as severe as that alleged in the rare case where this Circuit has found a petitioner to be entitled to relief under the Convention Against Torture. *See, e.g., Namo v. Gonzales*, 401 F.3d 453, 455 (6th Cir. 2005) (finding petitioner was tortured when Iraqi authorities "detained him for two weeks, during which time he was beaten, forced to witness the rape of a woman, and threatened with the rape of his own wife").

Moreover, in addition to evidence of past torture, this court must weigh evidence of "gross, flagrant, or mass violations of human rights" – and Dushi has presented none. The IJ may consider any other information relevant to the question of whether Petitioner is likely to face torture if returned to Albania, and the IJ specifically noted evidence of changed conditions in Albania "indicat[ing] that the Socialist Party has not in fact maintained a post-communist tradition of retribution against political leaders."

Finally, as noted *supra*, the IJ relied on evidence of changed circumstances in Albania, in that democratic processes were taking hold in the country. Dushi presented no evidence that he was more likely than not to be tortured in such a changed country.

The IJ's determination that Dushi was not entitled to relief under the Convention Against Torture was not manifestly contrary to the law, and therefore, this Court denies relief on that ground.

## CONCLUSION

For the foregoing reasons, Luzlim Flamur Dushi's petition for review from a final order of the BIA is **DENIED.**

**GIBBONS, Circuit Judge**, concurring. I concur in the denial of Dushi's petition for review but write separately to note that our conclusion that substantial evidence supports the IJ's credibility findings is determinative of all three of Dushi's claims. It is thus unnecessary to assume that Dushi had instead been found credible and reach the issues of whether Dushi has established past persecution or a likelihood of future prosecution, as required for withholding of removal, or a likelihood of torture, as required under the Convention Against Torture.