[DO NOT  PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**No. 05-11405**

_____

BIA No. A79-436-511

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 3, 2005
THOMAS K. KAHN
CLERK

WILNER JACQUES,

                                        Petitioner,

                    versus

U.S. ATTORNEY GENERAL,

                                        Respondent.

_____

**Petition for Review of an Order of the
Board of Immigration Appeals**

_____

**(November 3, 2005)**

**Before CARNES, MARCUS and KRAVITCH, Circuit Judges.**

**PER CURIAM:**

Wilner Jacques, a native and citizen of Haiti, petitions this Court for review of the final order of the Board of Immigration Appeals ("BIA"), which affirmed the immigration judge's ("IJ") denial of asylum, 8 U.S.C. § 1158, based on an adverse credibility determination. Removal proceedings commenced after April 1, 1997; the permanent provisions of the Immigration and Nationality Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), govern this petition.

## I. Background

Jacques entered the United States through the Miami International Airport on February 4, 2002, without a valid entry visa and with an airline ticket that indicated that he was in transit to Haiti. Upon arriving in Miami, Jacques sought asylum based on his fear of political persecution.[1] The Immigration and Naturalization Service ("INS") issued a Notice to Appear charging him with removability under INA §§ 212(a)(6)(C)(i) and 212(a)(7)(A)(i)(I), 8 U.S.C. §§ 1182(a)(6)(C)(i) and 1182(a)(7)(A)(i)(I).

Jacques alleged that he had been persecuted by, and feared further persecution from, the Lavalas Party, the party of former Haitian President Jean-Bertrand Aristide,

---

[1] Jacques also requested withholding of removal and relief under the Convention Against Torture. The IJ denied both, and Jacques does not challenge those decisions on appeal. Therefore, he has abandoned them. Al Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001).

due to his membership in the opposing Mochrenha Party. Specifically, Jacques claimed that on September 25, 2001 a group of Lavalas Party members approached his tailor shop, that he escaped through the shop's rear entrance and then fled the country. Jacques spent several months in Argentina before entering the United States. While in Argentina, Jacques's father reported the incident at the tailor shop to a justice of the peace, who then prepared a report regarding the incident. Jacques further alleged that Lavalas supporters shot his father twice, breaking his leg.

The IJ denied asylum relief, finding that Jacques's testimony lacked credibility, as there were numerous inconsistencies between his hearing testimony and his prior statements to the INS. Specifically, the IJ noted the following: (1) While Jacques testified at his hearing that the incident at his tailor shop occurred on September 25, 2001, in prior statements and reports, he had variously given the date as September 26 or September 23. At his hearing, Jacques argued that the September 25 and 26 discrepancy resulted from a translation problem. (2) Although Jacques testified that he was a tailor and owned a tailor shop, he previously had given an asylum officer a statement indicating that he was a bank teller. (3) Jacques testified that he was able to escape through the rear exit of his tailor shop as the Lavalas members approached. However, his Form I-589 indicates that he was not present when the incident at his

3

shop took place.[2]  (4) Jacques testified that he was both a member and a delegate of the Mochrenha Party; he indicated both in the Form I-589 and also in a statement to an asylum officer, however, that he was only a member of the party.  (5) Whereas Jacques testified before the IJ that his entire family were members of Mochrenha, he had indicated in a prior statement that no other family members were part of Mochrenha.  (6) Jacques submitted a letter from the Mochrenha Movement indicating that he was appointed as a delegate to the legislative elctions of May 21st, 2000.  He indicated on the Form I-589, however, that he did not join Mochrenha until September 2000.  Moreover, Jacques indicated in yet another statement that he joined the party in February 1999.  (7) Although Jacques testified that his father reported the incident at his tailor shop to a justice of the peace several months after it occurred, the Justice of the Peace Report indicates that Jacques himself reported the incident on September 26, 2001.  Jacques explained at his hearing that his father had made the report to the Justice of the Peace in his name, but the IJ did not find this credible, as there was no reason for the Justice of the Peace to make it sound as though Jacques himself had reported the incident.  (8) Finally, the IJ noted that although Jacques

---

[2]Furthermore, though not mentioned by the IJ, interview notes from Jacques's February 8 interview indicate that he stated that the Lavalas members who attacked his shop also gave him "a couple blows."  In the same interview Jacques apparently stated that the Lavalas members said "they were beating [him] because [he] was a Mocherana [*sic*]."

4

testified at his hearing that he had not been granted asylum by Argentina, a prior statement submitted by him indicates that Argentina had granted him asylum on November 7, 2001. Jacques attempted to excuse this discrepancy by explaining that he had obtained an extension of his stay in Argentina.

Based on the aforementioned inconsistencies, the IJ found that Jacques's testimony was not credible. Jacques appealed that finding to the BIA, which then dismissed Jacques's appeal. The BIA adopted the IJ's adverse credibility findings; however, the Board also found that even if Jacques testimony had been credible, Jacques failed to meet his burden of proof. Jacques now petitions this Court for review.

## II. Standard of Review

We review the IJ's findings of fact under the substantial-evidence test, and we must affirm the decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Antipova v. United States Att'y Gen., 392 F.3d 1259, 1261 (11th Cir. 2004) (quotations omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). We also review the IJ's credibility determinations under the "substantial evidence" test, and we may not substitute our judgment for that of the IJ. D-Muhumed v. U.S. Attorney

5

Gen., 388 F.3d 814, 818 (11th Cir. 2004).[3] When the BIA issues a separate decision, we review only that decision, "except to the extent that [the BIA] expressly adopts the IJ's opinion." Reyes-Sanchez v. United States Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). When, as here, "the Board adopts the IJ's reasoning, [this Court] review[s] the IJ's decision as well." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

## III. Discussion

An alien may obtain asylum if he is "refugee," meaning that he is unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of," among other things, his political opinion. 8 U.S.C. §§ 1101(a)(42)(A), 1158(a)(1), (b)(1). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. Al Najjar, 257 F.3d at 1284, 1287. A court may deny asylum on the basis of an adverse credibility determination alone. See Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1287 (11th Cir. 2005).

---

[3]The REAL ID Act of 2005 amended credibility determinations, adding INA §§ 208(b)(3)(B)(iii), 240(c)(4)(C), 8 U.S.C. §§ 1158(b)(3)(B)(iii), 1229a(c)(4)(C). Section 101(a)(3) and (d), Pub.L. No. 109-13, 119 Stat. 231, 303, 304-05. The Act states that these provisions "shall apply to applications for asylum, withholding, or other relief from removal made on or after" the date of enactment of the act, May 11, 2005, so the provisions do not affect this appeal. Pub.L. No. 109-13, 119 Stat. at 305.

Because many material inconsistencies exist between Jacques's hearing testimony and his other statements, substantial evidence supports the IJ's adverse credibility determination in this case.  The IJ's adverse credibility determination merits deference, for he stated specific, cogent reasons for his finding. See Forgue, 401 F.3d at 1287.  Accordingly, we **DENY** Jacques's petition for review.

7