NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0410n.06
Filed: June 16, 2006

No. 05-3234

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ADI MULLAJ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF A |
| | ) | DECISION OF THE BOARD OF |
| ALBERTO R. GONZALES, Attorney General | ) | IMMIGRATION APPEALS |
| of the United States, | ) | |
| | ) | |
| Respondent. | ) | |

Before: BATCHELDER and SUTTON, Circuit Judges; COFFMAN, District Judge.[*]

SUTTON, Circuit Judge. Adi Mullaj challenges an immigration judge's (IJ) finding, later affirmed without opinion by the Board of Immigration Appeals (BIA), that his testimony in support of his asylum application lacked credibility. He also challenges the BIA's denial of his motion to file an "out of time" brief. Because substantial evidence supports the IJ's adverse credibility determination and because Mullaj has not shown that the BIA abused its discretion in denying his motion, we deny the petition for review.

---

[*] The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation.

No. 05-3234
*Mullaj v. Gonzales*

I.

The applicant identifies himself as Adi Mullaj and claims that he is a native and citizen of Albania. According to his application for asylum, he entered the United States on October 19, 2001, at Miami International Airport, at which time he did not possess a valid entry document or any form of identification aside from a card indicating his membership in the "Youth Forum Democratic Party." JA 172. The same day, the Immigration and Naturalization Service served him with a notice to appear, alleging he was "not a citizen or national of the United States," JA 198, and claiming he was subject to removal under the Immigration and Nationality Act because he did not possess a "valid entry document" and because he was an alien "likely at any time to become a public charge," JA 198–99; *see* 8 U.S.C. § 1182(a)(7)(A)(i)(I), (a)(4)(A).

In response, Mullaj applied for asylum under 8 U.S.C. § 1158, withholding of removal, *id*. § 1231(b)(3), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, Pub. L. No. 105-277, § 2242, 112 Stat. 2681–761, 2681–822 (1998). At a hearing on his application, he testified that he had been beaten and harassed due to his support of the Democratic Party of Albania. The IJ, however, was unwilling to credit this testimony for several reasons: Mullaj could not establish his identity; his testimony conflicted in many instances with earlier statements he had made during his entry interview and in his application; his testimony conflicted with State Department country reports; and he demonstrated a propensity to change his testimony when confronted on cross-examination. Because essential elements of his

claim hinged on the credibility of his testimony, the IJ rejected his asylum, withholding-of-removal and Convention-Against-Torture claims.

Mullaj appealed to the BIA. While he managed to perfect his appeal, he failed to file a timely appellate brief. Over a month after the brief was due, he submitted a motion to file a brief "out of time," but did not attach the proposed brief to the motion. JA 8. Invoking an administrative rule that precluded the acceptance of such a motion without the attached submission of the proposed brief, the BIA denied the motion on December 30, 2004. On February 8, 2005, the BIA affirmed, "without opinion, the results of the decision below." JA 6. In his appeal to this court, Mullaj has challenged only the administrative ruling on asylum.

II.

To qualify for asylum, an applicant must first show that he "is a refugee within the meaning of section 1101(a)(42)(A) of this title." 8 U.S.C. § 1158(b)(1)(A). And to qualify as a refugee, the applicant must demonstrate "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id*. § 1101(42)(A). "When," as here, "the BIA summarily adopts the decision of the IJ without issuing its own opinion, we review the decision of the IJ as the final administrative order." *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005).

The applicant in this instance presented only his testimony to establish a well-founded fear of persecution, and the IJ did not believe it. We review an "IJ's adverse credibility determination

for 'substantial evidence,' reversing only if 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004) (citing 8 U.S.C. § 1252(b)(4)(B)); *see also Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004) ("This is a deferential standard: A reviewing court should not reverse 'simply because it is convinced that it would have decided the case differently.'"). At the same time, an "adverse credibility finding must be based on issues that go to the heart of the applicant's claim," not on "irrelevant inconsistenc[ies]." *Id.* at 926.

In our view, substantial evidence supports the IJ's adverse credibility determination, which turned on material gaps and inconsistencies in the applicant's testimony. The applicant, as an initial problem, failed to offer convincing evidence that he was who he said he was—Adi Mullaj—or indeed that he was even from Albania. This failing goes to the heart of his claim. "[A]sylum cannot be granted until the identity of the applicant has been checked against all appropriate records or databases maintained by the Attorney General and by the Secretary of State, including the Automated Visa Lookout System, to determine any grounds on which the alien may be inadmissible to or deportable from the United States, or ineligible to apply for or be granted asylum." 8 U.S.C. § 1158(d)(5)(A)(i). The IJ had ample reasons to be concerned about, and puzzled by, the applicant's lack of "any evidence of his identity and nationality." IJ Op. at 18. Mullaj claimed only to have a birth certificate to show where he was born and when, *see* JA 112 ("Besides the birth certificate, I don't have any other document."), but never submitted the certificate to the court even though he acknowledged that he had obtained it over a month before the hearing. The lone document he did produce to establish his identity was a membership card for the "Youth Forum Democratic Party,"

which contained just his name and picture. But even that was contradicted by his testimony: He testified that he joined the Democratic Party in March 2001, but the card indicated that he joined the party at least a year earlier in March 2000. Nor, as the IJ pointed out, did he lay any "foundation for how he got this document or who issued it." IJ Op. at 19. His explanation for what had become of his passport did not improve matters. Though claiming that it had been "torn up on the airplane," he somehow could not recall whether he had destroyed it or whether it had been destroyed "by persons who traveled with him whose names he did not know." *Id*. at 24. The applicant's inability to establish his identity and nationality supports the IJ's adverse credibility determination. *See Dushi v. Gonzales*, No. 04-3369, 2005 WL 2660423, at *5 (6th Cir. Oct. 19, 2005) (upholding "adverse credibility finding [ ] based on," among other things, "the fact that [the petitioner] presented no documents to establish her identity"); *see also, e.g.*, *Singh v. Gonzales*, No. 04-74799, 2006 WL 925263, at *1 (9th Cir. Apr. 10, 2006) ("[T]he IJ cited specific, cogent reasons for doubting [the petitioner's] Sikh identity, which [the petitioner] claims to be the motivation for his past and probable future persecution, and thus also supports the IJ's adverse credibility finding."); *Diallo v. Gonzales*, No. 04-6067-AG, 2006 WL 448529, at *1 (2d Cir. Feb. 21, 2006) ("The adverse credibility [determination] finds further support in [the petitioner's] inability to state his date of birth consistently and his failure otherwise to establish his own identity or Mauritanian nationality.").

Several material inconsistencies in the applicant's testimony also supported the IJ's determination. While the applicant testified about arrests and beatings by the Albanian police, he mentioned nothing of the sort in a sworn statement given upon his arrival at the Miami International

Airport. When asked, "Have you ever been arrested before at any time or any place?" he answered, "No." JA 179. And when asked why he left Albania, he replied, "There is no freedom for democrats, communism took over and there is no freedom." JA 180. At no point during the entry interview did he make any mention of anything amounting to persecution. The IJ acted well within her discretion in relying on these inconsistencies in making an adverse credibility determination. *See Beleh v. Gonzales*, No. 04-3948, 2005 WL 3479837, at *1 (6th Cir. Dec. 21, 2005) (upholding adverse credibility determination based on "inconsistencies in Petitioner's testimony, his application, and prior sworn statements that dealt with material elements of Petitioner's claim"); *Bzhetaj v. Gonzales*, No. 04-3787, 2005 WL 1916367, at *2 (6th Cir. Aug. 10, 2005) (per curiam) (upholding adverse credibility determination where petitioner "change[d] and embellish[ed] her version of events"); *see also Gao v. BIA*, No. 04-0669-AG, 2005 WL 3275610, at *1 (2d Cir. Dec. 5, 2005) (order) (upholding adverse credibility determination where "testimony was not consistent"); *Jacques v. United States Attorney Gen.*, No. 05-11405, 2005 WL 2888193, at *2 (11th Cir. Nov. 3, 2005) ("Because many material inconsistencies exist between Jacques's hearing testimony and his other statements, substantial evidence supports the IJ's adverse credibility determination in this case.").

Nor did the applicant's manner at his removal hearing aid his cause. When pressed on cross-examination, the IJ noted that he was "significantly non-responsive." IJ Op. at 22. And when confronted with an inconsistency between his testimony and his application, he demonstrated "hesitation on first questioning followed by a complete change in testimony," which "characterized" much of his "testimony on cross-examination." *Id.* As the IJ fairly noted and as she fairly

concluded, a "change in testimony"—particularly one prompted by legitimate cross-examination questions—does not support an applicant's "credibility." *Id*. at 23. *See, e.g.*, *Jelkovski v. INS*, No. 02-3814, 2004 WL 1447655, at *2 (6th Cir. June 18, 2004) (upholding adverse credibility determination where petitioner "changed his story on cross-examination"); *see also Kaur v. Gonzales*, No. 04-71385, 2005 WL 2660434, at *1 (9th Cir. Oct. 11, 2005) ("Substantial evidence supports the BIA's adverse credibility determination, which is based on Kaur's failure to respond to numerous questions during cross-examination and on Kaur's demeanor."); *Jiang v. INS*, No. 03-4007, 2005 WL 2173678, at *1 (2d Cir. Sept. 7, 2005) (finding "ample evidence to support the IJ's determination that Jiang was not credible" where petitioner was "evasive and non-responsive" during cross-examination).

The IJ also observed that the State Department's country reports did not support Mullaj's account of persecution. In 2001, the State Department reported that "[a]ll political parties have been active in most of the country without a pattern of mistreatment, even during the dark days of 1997 [following an economic collapse]. There is no post-Communist tradition of retribution against political leaders and few instances thereof." JA 171. And the 2003 report noted that there "were no reports of politically motivated disappearances," JA 154, and "no reports of political prisoners," JA 157. Whether these reports by themselves would have sufficed to undermine the credibility of the applicant's testimony need not detain us; for present purposes, it suffices to say that the IJ's reference to them here in connection with the other credibility problems in the applicant's testimony, as well as the absence of any corroborating evidence supporting the applicant's testimony, offered

further support for her ruling. *See, e.g.*, *Jakaj v. United States Dep't of Justice*, Nos. 03-4802-AG(L), 03-4804-AG(CON), 2006 WL 166479, at *2 (2d Cir. Jan. 24, 2006) (order) (upholding adverse credibility determination where "the IJ found that [petitioner's] testimony conflicted with the Department of State report"); *Debrezion v. Gonzales*, No. 04-74018, 2006 WL 41224, at *1 (9th Cir. Jan. 6, 2006) (upholding adverse credibility determination based on "conflicts between [petitioner's] testimony and Country Reports" and "failure to present credible evidence to verify [ ] identity and Ethiopian nationality").

The applicant offers several contrary arguments, all unpersuasive. First, contrary to the applicant's contention, the IJ did not rely exclusively (or even primarily) on the country reports in making its adverse credibility determination, as shown above. Second, the applicant argues that the IJ was required to make a "demeanor" finding and did not. Whether this is indeed a requirement (and the applicant gives us no authority-based reason to think that it is), the fact remains that the IJ found that the applicant's deportment supported her credibility finding. Third, because the applicant could not convince the IJ that the events in his story occurred and because substantial evidence supports that finding, we need not consider whether his story, even if true, would have qualified him for asylum. *See, e.g.*, *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005) ("Because his testimony is not credible, [the petitioner] has failed to demonstrate past persecution or a well-founded fear of future persecution. Therefore, we affirm the BIA's decision denying his asylum claim."); *see also Molano-Paz v. Gonzales*, No. 04-4320, 2005 WL 3542569, at *5 n.10 (3d Cir. Dec. 28, 2005)

("Because the judgment rests on the credibility determination, we need not consider whether [the petitioner] would have met his burden if his testimony had been found credible.").

## III.

Mullaj separately argues that the BIA erred in denying his motion to accept his brief out of time. But, in doing so, he fails to bring to our attention any authority that supports his argument or any explanation of precisely what the basis of his claim is—which by itself suffices to reject it. At any rate, we generally give abuse-of-discretion review to claims that a court failed to accept an untimely brief, and the applicant has offered no explanation why the BIA's rule was one with which he could not, or should not have to, comply. *See Iancu v. INS*, No. 02-3480, 2003 WL 21421639, at \*1 (6th Cir. June 17, 2003) ("This court reviews the Board's denial of a petitioner's motion to file a brief out of time for an abuse of discretion."). And even if we characterize the claim as one sounding in due process, he has not shown that this was the kind of "defect in the removal proceedings" that "might have led to a denial of justice." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001) (internal quotation marks omitted). The applicant has not directed our attention to any argument that he could have made to the BIA, but did not, that would have had any prospect of altering the path of this proceeding.

## IV.

For these reasons, we deny the petition for review.